UNITED STATES of America, Plaintiff-Appellee,

v.

Henry J. BLECKNER, Defendant-Appellant.

No. 78–2724.

United States Court of Appeals, Ninth Circuit.

April 20, 1979.

Eric J. Swenson, Asst. U. S. Atty., San Francisco, Cal., argued, for plaintiff-appellee.

Marshall W. Krause, Larkspur, Cal., argued for defendant-appellant.

Before CHOY and SNEED, Circuit Judges, and BONSAL,* District Judge.

BONSAL, District Judge.

This is an appeal from a judgment of conviction entered on May 16, 1978 of one count of conspiracy to defraud the United States by hindering the impartial application of federal funds in violation of 18 U.S.C. § 371 and four counts of wilfully making false statements to an agency of the United States in violation of 18 U.S.C. § 1001.

On or about June 18, 1973, the appellant, Henry Bleckner, a business representative of the San Francisco Redevelopment Agency ("SFRA"), met William Lynch, an employee of Lynch & Sons Vans and Storage ("Lynch & Sons"), a family-owned moving and storage company. According to Lynch's testimony, among the subjects discussed at the meeting was the federally assisted relocation of a food processing plant, the Oppenheimer Casing Company ("Oppenheimer"), from Hunter's point to South San Francisco as part of a joint city/federal urban renewal project. Lynch testified that appellant made a statement which Lynch took to mean that if he (Lynch) put three bids together, the minimum required by SFRA regulations, the relocation job would be his.

Although never instructed by Bleckner to do so, Lynch sought to create the appearance of competitive bidding by inducing two other movers to submit false bid pack-

* Honorable Dudley B. Bonsal, Senior United States District Judge for the Southern District of New York, sitting by designation.

ages. The bids included estimates for sub-contracting work at Oppenheimer's new site in South San Francisco. Lynch's bid for his company estimated the cost of the subcontracting work to be $23,000. However, two Oppenheimer officials, Dolgoff and Levaco, allegedly instructed Lynch not to perform any of the subcontracting work because Oppenheimer's out-of-state headquarters, unaware that the expense of the subcontracting work was reimbursable, had already made provisions for the necessary subcontracting work. Lynch testified that his bid's estimate of $23,000 for the subcontracting represented a "kick-back" that was later paid to Dolgoff and Levaco. Appellant testified that while he knew that Lynch's bid provided for subcontracting work, he knew neither who was to perform it nor when it was to be performed.

The final claim package submitted by Lynch & Sons recited the three false bids and included Lynch's estimate for the $23,000 of subcontracting work. Appellant signed the claim form and recommended payment thereof. The Government contended at trial that appellant knew that the claim form contained the falsified item, but appellant denied it.

In December, 1973, the Department of Housing and Urban Development paid Lynch & Sons $30,471 for the Oppenheimer move and satisfied an outstanding federal tax lien of $19,694 on behalf of Lynch & Sons. Lynch then paid Dolgoff and Levaco $23,600 as a "kick-back" on or about January 3, 1974.

On January 4, 1974, appellant went to his safety deposit box at the Bank of Tokyo in San Francisco. Thereafter, in February, 1974, appellant purchased $600 in traveler's checks and in October, 1974, another $6,000 which appellant testified he purchased with funds from his safety deposit box. Appellant moved to suppress this evidence on the ground that it was of low probative value and highly prejudicial. The trial court denied the motion on April 5, 1978.

The Government contended that the money in appellant's safety deposit box was part of the $23,600 "kick-back" paid to Dolgoff and Levaco. Appellant explained that the money used to purchase the traveler's checks had been secreted away from his usual income in anticipation of an adverse property settlement with his estranged, now former, wife.

Appellant asserts two grounds of error: First, that the trial court erroneously limited his cross-examination of the Government's key witness, William Lynch. Second, that the trial court erred in denying appellant's motion to suppress.

## CROSS–EXAMINATION OF WILLIAM LYNCH

Mr. Lynch was charged in the same indictment with one count of conspiracy to defraud the United States, seven counts of making false statements to an agency of the United States and two counts of income tax evasion. Following plea bargaining, Lynch pleaded guilty to the conspiracy count and the Government agreed to dismiss the other counts against him in return for his cooperation at appellant's trial. Lynch appeared before the trial judge for sentencing on January 23, 1978 and was given a split sentence of 18 months with six months to be served, and the remainder suspended with probation for three years, and fined $5,000.

During Lynch's direct examination, the jury learned that all but the conspiracy count against Lynch had been dismissed in return for his testimony at the instant trial, but the jury learned neither that the Government had recommended probation at the sentence hearing nor that the trial court had stayed the execution of Lynch's sentence, advising him that his sentence was subject to reconsideration.** The trial court refused to permit cross-examination on these points on the ground that it would raise collateral issues which would tend to confuse the jury.

---

** Following the conclusion of the appellant's trial, Lynch's term of imprisonment was reduced from six months to four months.

Appellant contends that the restrictions on his cross-examination of Lynch deprived him of his Sixth Amendment right to confront witnesses against him. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). *Accord, United States v. Alvarez-Lopez*, 559 F.2d 1155 (9th Cir. 1977). In *Davis*, the Supreme Court held that a defendant's inability to inquire into a witness' motivation for testifying denied the defendant his right to confront witnesses against him. While the appellant in *Davis* was permitted to ask *whether* the witness was biased, he was unable to develop a record as to *why* he might be biased. 415 U.S. at 318, 94 S.Ct. 1105. As a result, the Supreme Court reversed the conviction and remanded for a new trial.

 The right to cross-examine is not unlimited and the scope of cross-examination is within the sound discretion of the trial court and will not be disturbed on appeal absent clear abuse of discretion. *United States v. Kizer*, 569 F.2d 504 (9th Cir.), *cert. denied*, 435 U.S. 976, 98 S.Ct. 1626, 56 L.Ed.2d 71 (1978). When the cross-examination relates to impeachment evidence, the test as to whether a trial court has abused its discretion is whether the jury had in its possession sufficient information to appraise the biases and motivations of the witness. *Skinner v. Cardwell*, 564 F.2d 1381 (9th Cir. 1977), *cert. denied*, 435 U.S. 1009, 98 S.Ct. 1883, 56 L.Ed.2d 392 (1978).

We conclude from a reading of the record that the cross-examination was unduly limited. The inquiries which appellant was prohibited from making did not involve an incursion into collateral matters. *United States v. Alvarez-Lopez, supra* at 1158. Lynch's testimony was crucial to the Government's case since it provided the only link between the "kick-back" scheme and the appellant. In the circumstances of this case, the jury was entitled to hear that the execution of Lynch's sentence had been stayed and that it would be reconsidered following the completion of his cooperation with the Government. The appellant should have been permitted to develop a record from which to argue why Lynch might have been biased towards the appellant or otherwise motivated to testify. As the Supreme Court stated in *Davis*,

> "[C]ounsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." 415 U.S. at 318, 94 S.Ct. at 1111.

In view of the foregoing, we find that the limitation imposed on appellant's cross-examination of Lynch was error, and we do not find the error harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966).

We have considered appellant's other contentions and find no merit in them.

Accordingly, the conviction of the appellant is REVERSED and the matter REMANDED for a new trial.