**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Harold GERE, Defendant-Appellant.**

**No. 80–1771.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 10, 1981.

Decided Nov. 13, 1981.

Rehearing and Rehearing En Banc Denied Jan. 13, 1982.

Dennis E. Kinnaird, Munger, Tolles & Rickershauser, Los Angeles, Cal., for defendant-appellant.

Nancy Wieben Stock, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before WRIGHT and WALLACE, Circuit Judges, and CARROLL, District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

The appellant was convicted by a jury of two counts of mail fraud and one count of violation of 18 U.S.C. § 844(i), all in connection with the arson of the building housing his two businesses. On appeal, he alleges error in admission of coconspirator hearsay, in failure to give a requested immune witness instruction, in failure to give *sua sponte* an accomplice instruction, and in application of § 844(i) to what was simply arson.

* Of the District of Arizona.

## I.

Gere's building was a warehouse containing offices and storage space. It housed his retail and wholesale office and photocopier supply businesses.

The building and its contents burned on May 12, 1979. Firemen and investigators determined from marks on the floor, burn patterns in wood and other materials, and the loci of the fires within the warehouse that the fire had been "set" for delayed ignition from outside the cargo door of the building with the use of "trailers" of photocopier fluid and fluid-soaked materials. The "trailers" were in effect fuses running from the point of ignition into the warehouse.

Gere was connected to the fire by circumstantial evidence. He was the last person in the warehouse before the fire.

His motive was proved by evidence that his retailing business had been undermined by litigation against him for unfair telephone sales practices. Testimony relating out-of-court statements by his general manager, Martin Whiter, was introduced to prove that Gere wished to get out of the business. Whiter and others testified to off-record cash sales of inventory by Gere and Whiter at discount prices. Whiter's out-of-court statements were again used to explain that Gere's intent was to take cash from the business without showing a decrease in inventory. The "paper" inventory's destruction would result in a second payment with insurance proceeds.

Before the fire, Gere arranged a loan secured by inventory. At about that time, an endorsement was added to the fire insurance policy providing for repayment to the bank in the event of destruction of the secured inventory. "Junk" inventory stored at another location was moved into the building.

Morris Singer, an acquaintance in the fire reconstruction business, testified to a conversation with Gere at a club they frequent-

ed, where Gere asked if he "knew of someone who could make a fire." Though Gere argues that this was only casual conversation, Singer approached at least one person about the possibility of setting the fire.

After the fire, Gere made a request by mail for an advance against his claims under his fire insurance policy. In another mailing he swore that he did not cause the loss.

Gere and Whiter were indicted on four counts: (1) conspiracy to commit mail fraud and violate § 844(i), (2) mail fraud based upon the requested advance, (3) mail fraud based upon the sworn proof of loss, and (4) violation of § 844(i) by use of an "explosive" to destroy the building, resulting in the death of one fireman and the injury of 24 others.

At the close of the evidence, Whiter's motion for acquittal on all counts was granted. The conspiracy count was dismissed as to both defendants. The jury returned a verdict against Gere on the remaining counts.

## II.

### A. Coconspirator Hearsay

Whiter's out-of-court statements were allowed before the jury under the coconspirator hearsay exception. Preceding the testimony, the court cautioned the jury that it was admitted subject to the finding of a conspiracy between Whiter and Gere. The jurors were instructed to "compartmentalize" the testimony they were to hear and not consider it until they were convinced beyond a reasonable doubt that there was a conspiracy. Concurrently, the judge instructed that the conspiracy had not yet been proved.

Before closing arguments, the court told the jury that sufficient evidence had not been presented from which it could find beyond a reasonable doubt that there was a conspiracy between Whiter and Gere. It then dismissed the first count of the indictment. The court made no specific reference to the effect of this finding on the testimony previously heard. Defense coun-

sel did not object, or refer in closing argument to the effect of the court's no-conspiracy finding upon testimony previously presented.

Because timely objection was not made, the "plain error" standard of review is to be applied. Fed.R.Crim.P. 30; *United States v. Krasn*, 614 F.2d 1229, 1235 (9th Cir. 1980). We are to decide whether it is plain error not to give a final "connecting up" instruction regarding the effect of a no-conspiracy finding upon hearsay testimony conditionally admitted under the coconspirator exception to the hearsay rule.

The appellant argues that before hearsay declarations go before the jury, the judge is required to make a determination on the record whether the government has sufficiently proved conspiracy and to rule on the ultimate admissibility of the testimony. Because of failure to do so, the jury was allowed to consider hearsay testimony.

Where hearsay testimony is conditionally introduced, we have required that the trial judge make the ultimate determination of whether a foundation has been established. *United States v. Eubanks*, 591 F.2d 513 (9th Cir. 1979); *United States v. Weiner*, 578 F.2d 757 (9th Cir.), *cert. denied*, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978). Before the testimony will be allowed to go to the jury, the prosecution must show that (1) the declaration was in furtherance of the conspiracy, (2) it was made during the pendency of the conspiracy, and (3) there is independent proof of the existence of the conspiracy and of the connection of the declarant and the defendant to it. *Weiner*, 578 F.2d at 768.

The quantum of independent proof required for the third element of the foundation requirement is "sufficient, substantial evidence to establish a prima facie case." *Weiner*, 578 F.2d at 768. We have recently emphasized the importance of the first element in *United States v. Fielding*, 645 F.2d 719 (9th Cir. 1981), holding that mere descriptions of the conspiracy to a nonconspirator are not "in furtherance of" the conspiracy.

■ The trial judge may make a preliminary determination of admissibility or may admit the testimony conditionally, subject to "connecting up" with the foundation to be eventually laid by the prosecution. *United States v. Zemek*, 634 F.2d 1159, 1169 (9th Cir. 1980), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1359, 67 L.Ed.2d 341 (1981) and 450 U.S. 985, 101 S.Ct. 1525, 67 L.Ed.2d 821 (1981).

When there has been sufficient evidence to sustain a finding of conspiracy, we have held that giving an instruction like that given here not reversible error. We have called such an instruction "unduly generous." *United States v. Miranda-Uriarte*, 649 F.2d 1345, 1351 n.4, 1353 (9th Cir. 1981); *United States v. Lutz*, 621 F.2d 940, 946 n.2 (9th Cir.), *cert. denied*, 449 U.S. 859, 101 S.Ct. 160, 66 L.Ed.2d 75 (1980) and 449 U.S. 1093, 101 S.Ct. 890, 66 L.Ed.2d 822 (1980); *United States v. Testa*, 548 F.2d 847, 853 n.3 (9th Cir. 1977).

It is generous when the judge finds sufficient evidence to take the conspiracy count to the jury. Though there is enough evidence to permit the admission of the coconspirator hearsay, the judge thereby imposes the further requirement that the jury find conspiracy beyond a reasonable doubt before considering the hearsay testimony. In this circumstance, whether the jury performs this mental gymnastic is of little consequence, since the coconspirator hearsay is properly admitted anyway.

But, when the instruction is given preliminary to the conditional admission of the testimony, and no more is said except that the judge finds no conspiracy, whether the jury then strikes the testimony from its consideration is crucial. The danger of its not doing so is that it may consider inadmissible hearsay.

■ In this situation (where conspiracy has been charged, testimony conditionally admitted with an instruction that the jury is not to consider it until conspiracy is found beyond a reasonable doubt, and a no-conspiracy finding is later made and the count dismissed) we believe greater caution should be used to assure that the jury adequately connects up the no-conspiracy finding with the previously admitted testimony. The jury should be instructed to ignore the specific items of testimony conditionally admitted.[1]

1. Our analysis is consistent with the *Federal Rules of Evidence.*

Though we have not explicitly said so, the preliminary determination of admissibility is for the judge under Rule 104(a). Rule 104(a) codifies the law of this circuit that has existed since before the Rules' promulgation. *See Carbo v. United States*, 314 F.2d 718, 735–38 (9th Cir. 1963).

The trial judge fulfills his Rule 104(a) responsibility when he allows a conspiracy count to go to the jury, even though he may not explicitly find on the record that the foundation requirement has been fulfilled or instruct the jury that it may consider the coconspirator hearsay statements. It is within the judge's discretion not to make such statements because of their potential for prejudice. When the judge finds, explicitly or implicitly, that the foundation has been laid, the defendant cannot complain if he then imposes the further requirement that the jury consider the coconspirator hearsay statements only if it finds conspiracy beyond a reasonable doubt. *See, e. g., United States v. Miranda-Uriarte, supra.*

The judge fulfills his Rule 104(a) responsibility when he makes an explicit finding that the government has not introduced evidence sufficient to lay the foundation for admissibility or when he instructs the jury not to consider the coconspirator statements.

*See generally* Marcus, *Co-Conspirator Declarations: The Federal Rules of Evidence and Other Recent Developments, From a Criminal Law Perspective*, 7 Am.J.Crim.L. 287 (1979); Comment, *The Impact of Federal Rule of Evidence 104 on the Coconspirator Exception to the Hearsay Rule*, 28 Emory L.J. 1115 (1979).

The judge here explicitly found that there had not been introduced enough evidence for the jury to find conspiracy beyond a reasonable doubt. If connected immediately to the instruction given before the prior conditional admission of coconspirator hearsay statements, this would signal to the jury that it could not consider those statements to determine Gere's guilt on the remaining counts. With this no-conspiracy finding, the judge fulfilled his Rule 104(a) responsibility.

The narrow issue we decide is whether, in addition to the pre-admission instructions and the no-conspiracy finding and in the absence of objection or request, the judge was required to describe specifically the effect of the no-conspiracy finding on the previous testimony.

■ The question here, however, is whether the trial judge's failure to so instruct constituted plain error. We hold that it did not.

The conditionally admitted testimony largely described Gere's bleeding cash from the business, suggesting an intent to exploit the destruction of the inventory by presenting a false picture of its amount. But, this was not the only evidence of the cash sales nor was it the only evidence suggesting Gere was responsible for the arson. On these facts the district judge did not commit plain error.

## B. *Immune Witness Instruction*

Gere argues that Morris Singer thought he was testifying under immunity from prosecution and that the court should have given a requested immunized witness instruction.

The court entertained a proposed immune witness instruction. It declined to give that, but promised to give its "substance." Gere's counsel argued that the court would instruct the jury to consider Singer's testimony as if he were an immune witness. After instructions were given and before the jury retired, Gere objected to the instruction given.

■ A trial judge is given substantial latitude in tailoring instructions so long as they fairly and adequately cover the issues presented. The adequacy of the entire charge is to be reviewed in the context of the whole trial. Challenges pertaining only to the trial judge's language or formulation of the charge are reversible only for abuse of discretion. *United States v. James*, 576 F.2d 223, 226–27 (9th Cir. 1978).

There is doubt Mr. Singer in fact believed he was an immune witness. He denied in his testimony any explicit or implicit agreement with the government.

■ Assuming he did believe he was immunized, the question is whether the trial judge abused his discretion in not giving verbatim the instruction requested by the defense.

Reviewing the record, we believe the "substance" agreed upon was that Singer's testimony should be considered with caution if he in fact believed he was an immunized witness. The court expressed doubt that Singer thought he was immunized, but agreed to instruct in reference to his testimony. It instructed the jury to view Singer's testimony with suspicion if it found Singer believed himself immunized, though it interjected language suggesting Singer could be equated to other witnesses who said they believed they would not be prosecuted. Gere argues that this interjection made the instruction ambiguous.

The instruction might have been better framed, but in light of the rest of the charge, it was not an abuse of discretion.

## C. *Accomplice Instruction*

Gere argues that, because Whiter was accused of being an accomplice and because Singer thought he could be accused, the court by its own motion should have given an accomplice instruction in reference to their testimony. Though it did not give an accomplice instruction, the court did give one on general credibility.

■ It is settled in this circuit that where an accomplice instruction is not requested, it is not plain error not to give one *sua sponte*. *DeCarlo v. United States*, 422 F.2d 237, 240–41 (9th Cir. 1970); *United States v. Johnson*, 415 F.2d 653, 655 (9th Cir. 1969), *cert. denied*, 396 U.S. 1019, 90 S.Ct. 588, 24 L.Ed.2d 511 (1970).

The district court's failure to give an accomplice instruction on its own motion was not plain error.

## D. *Section 844(i)*

Section 844(i) provides penalties for destruction of a building used in interstate commerce "by means of an explosive." The penalty is more severe when a person has been killed or injured.

"Explosive" is defined in § 844(j) as including, among other things, "explosive and incendiary devices" within the meaning of 18 U.S.C. § 232(5).

According to § 232(5), "explosive or incendiary device" means

(C) any incendiary bomb or grenade, fire bomb, or similar device, including any device which (i) consists of or includes a breakable container including a flammable liquid or compound, and a wick . . . .

Gere argues that § 844(i) was not meant to be a federal arson statute but instead should be narrowly construed within the scope of the purpose for which it was formulated. We agree.

The legislative history of § 844(i) describes congressional concern with bombings rampant in the 1960's and '70's. Though there is language suggesting broad jurisdiction, it relates to buildings in interstate commerce and not to the manner by which they are destroyed. The cross-reference to § 232(5), which appears to bring within the section "molotov cocktails" and similar devices, should not be read to broaden the section's reach as the government proposes.

 The purpose of the section was to protect buildings against the specific evil of bombing. There is no indication that it was meant to overlap state arson law relating to buildings in interstate commerce. *Cf. United States v. Hepp*, 656 F.2d 350 (8th Cir. 1981) (leaking LNG meter allowed to explode). We reverse Gere's conviction of a violation of § 844(i).

AFFIRMED in part, REVERSED as to the § 844(i) count and REMANDED for imposition of corrected sentence. The mandate will issue now.

CARROLL, District Judge, dissenting:

I concur in the reversal of Gere's conviction of violating 18 U.S.C. § 844(i).

I would also reverse the mail fraud counts and remand for a new trial as to those counts. In my view, the totality of the instruction problems about which Gere complains affected his substantial rights to a fair and impartial trial.

A significant portion of the government's case against Gere involved statements made by the putative co-conspirator and conditionally admitted pending establishment of the conspiracy. Gere moved for a mistrial when the conspiracy count was dismissed. The motion was based on the nature and extent of the co-conspirator statements heard by the jury during the four and one-half weeks trial. The court denied the motion, but agreed to further instruct the jury to the effect that Gere could not be convicted on the basis of what the dismissed co-conspirator said or did. The court did not provide counsel with a copy of the proposed instruction, nor did it state on the record the full text of any instruction.

The court failed to give the cautionary instruction in its charge and trial counsel failed to make an additional request or objection before the case went to the jury. Under these circumstances, I would find reversible error. Fed.R.Crim.P. 52, *Ramer v. U.S.*, 390 F.2d 564, 580 (9th Cir. 1968). *See also U. S. v. Kelinson*, 205 F.2d 600, 601–602 (2nd Cir. 1953).

This court's opinion sets forth the background for Gere's second problem with the trial court's instructions having to do with the so-called immune-witness instruction. The trial court had agreed to give the "substance" of an instruction requested by Gere, but did not advise counsel as to the text of the court's proposed revision either before argument or the giving of the "substance" instruction to the jury. Again, the problem arises from counsel not having an opportunity to object in a meaningful and timely manner. An appellate court is then left to resolve what the trial court "agreed" to do, and decide whether the defendant was prejudiced by the instruction as given. The procedure in this instance would appear in conflict with the provisions of Fed.R. Crim.P. 30 that "The court shall inform counsel of its proposed action upon the requests [of counsel] prior to their arguments to the jury . . ."