**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert CUTLER, Defendant-Appellant.**

**No. 81–1366.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 5, 1982.

Decided May 10, 1982.

Rehearing Denied June 28, 1982.

Richard G. Sherman, Los Angeles, Cal., for defendant-appellant.

Nancy Wieben Stock, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before WRIGHT, ALARCON and REINHARDT, Circuit Judges.

## OPINION

ALARCON, Circuit Judge:

Robert Cutler appeals from his conviction of conspiracy to commit mail fraud and arson in violation of 18 U.S.C. § 371, Count One, use of an explosive to destroy a building in violation of 18 U.S.C. § 844(i), Count Two, and mail fraud in violation of 18 U.S.C. § 1341, Counts Three through Six. We affirm the conspiracy and mail fraud charge and reverse the conviction for the use of an explosive to destroy a building.

## I. OPERATIVE FACTS

On December 11, 1976, Cutler's warehouse was destroyed by a fire. Approximately twenty gallons of gasoline were spread throughout the warehouse and out the door into the alley. The "trailer" of gasoline that was spread from the ware-. house into the alley was ignited by a match. At trial, counsel entered into a written stipulation that the building was destroyed by an "explosion" within the meaning of 18 U.S.C. § 844(i).

The evidence adduced at trial indicated that Cutler paid his employee, Walter Levoff to hire an arsonist to burn the warehouse. During Levoff's testimony, the defense attempted to cross-examine him concerning other fires that had occurred on the premises of other businesses in which he had been involved. The government objected to any further questioning on this point. The court required the defense to defer questioning of Levoff on this subject until after Cutler's testimony. The court also ruled that no extrinsic evidence would be received on this point. After Cutler testified, the defense called Levoff to the stand and examined him about his participation in approximately six fires dating back to 1969. Levoff denied participating in the setting of any of these fires.

## II. ISSUES ON APPEAL

Cutler seeks reversal on the following grounds:

*One.* The conviction for the use of an explosive was based on a written stipulation entered into upon a mutual mistake of law.

*Two.* The court abused its discretion in restricting cross-examination of a key government witness.

*Three.* The court improperly precluded the introduction of extrinsic evidence of other fires of an incendiary origin.

## III. EFFECT OF STIPULATION ENTERED INTO UNDER A MISTAKE OF LAW

At trial, defense counsel entered into a written stipulation that the means used to destroy Cutler's warehouse constituted an "explosive" within the meaning of § 844(i).[1] After Cutler's conviction this court held, in *United States v. Gere*, 662 F.2d 1291 (9th Cir. 1981), that a fire set for delayed ignition by the use of trailers was *not* an explosive within the meaning of § 844(i). *Id.* at 1295–96. Thus, the written stipulation entered into during the trial of this matter was based on an erroneous understanding of the law as interpreted by this court in *Gere.*

■■ Cutler argues that it would be "unconscionable" to affirm his conviction on the "explosives" charge where it appears that his attorney was in error as to the legal effect of the facts upon which the stipulation was premised. We agree. It is our view that it would be manifest injustice to permit a conviction to stand where counsel have entered into a stipulation that certain facts established an element of the offense when, as a matter of law, assuming the truth of such facts, no crime was proved. *See Marshall v. Emersons, Ltd.*, 593 F.2d 565, 568 (4th Cir. 1979). If we were to affirm this charge, Cutler would stand convicted of an offense which under *Gere* he did not commit.

■■ Nothing we say here should be construed as a holding that defense counsel may escape the consequences of a stipulation solely because it was entered into without a full understanding of the law. We hold, instead, that upon an appeal from a criminal charge, an appellant may be relieved of a stipulation, when it would be manifestly unjust to uphold a conviction where, because of an intervening change in the law, there is insufficient evidence to establish the commission of a crime.

In the matter before us, without the stipulation, there is insufficient evidence to establish that an explosive was used as required under § 844(i). Accordingly, Cutler's conviction must be reversed on this charge.

## IV. LIMITATION ON CROSS–EXAMINATION

■■ Cutler seeks reversal based on the limitation of his cross-examination of Levoff concerning other fires that had occurred at buildings in the area. The sixth amendment guarantees defendant's right to cross-examine witnesses to challenge their credibility. *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974). The scope of the cross-examination of a witness is subject to the discretion of the trial court and is reviewable solely for an abuse of that discretion. *United States v. Bleckner*, 601 F.2d 382, 385 (9th Cir. 1979). When the government's case turns on the credibility of a witness, defense counsel must be given the maximum opportunity to cross-examine and test credibility. *Burr v. Sullivan*, 618 F.2d 583, 587 (9th Cir. 1980).

■ We find that the trial court committed no error as to the cross-examination of Levoff. The effect of the court's ruling limiting Levoff's cross-examination was simply to delay, not restrict, a testing of his credibility; defense counsel had a maximum opportunity to test Levoff's credibility. Ultimately Levoff was questioned as to the earlier fires upon which Cutler bases his claim of improper restriction of Levoff's testimony. In addition Levoff was questioned as to his plea agreement, his prior felony conviction, his false testimony in an

---

1. The written stipulation in question, which pertained only to Count Two, provided as follows:

 That on the afternoon of December 11, 1976 within the warehouse located at 526 South Alameda Street, Los Angeles, California there existed an explosive air-fuel mixture within the meaning of Title 18, United States Code, Section 844(j) [defines "explosive" under, *inter alia*, subsection (i) ] as alleged in Count Two of the Indictment, to wit: a chemical compound or mixture which contained oxidizing and combustible units and other ingredients, in such proportions that ignition by fire of this combination may cause an explosion.

unrelated proceeding, his prior parole violation, and his motive to testify against Cutler. This impeaching evidence gave the jury an adequate opportunity to make a discriminating appraisal of the bias and motive of the witness. *See Bleckner*, 601 F.2d at 385 (test of abuse of discretion by trial court is whether the jury had sufficient information to appraise the biases and motives of the witness); *Skinner v. Cardwell*, 564 F.2d 1381, 1389 (9th Cir. 1977), *cert. denied*, 435 U.S. 1009, 98 S.Ct. 1883, 56 L.Ed.2d 392 (1978) (no denial of effective cross-examination for impeachment where the jury has sufficient information to appraise the bias and motives of the witness).

■ Cutler's contention that Levoff's testimony concerning previous fires should have been admitted under Fed.R.Evid. 404(b) must also fail. Rule 404(b) permits evidence of specific acts as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The trial judge, however, has the discretion to exclude such evidence and his decision will be overturned on appeal only if it has been abused. *See United States v. Green*, 648 F.2d 587, 592–93 (9th Cir. 1981). As discussed above, the trial court did not abuse its discretion; Levoff ultimately testified as to the previous fires.

## V. EXCLUSION OF EXTRINSIC EVIDENCE

■ Cutler also challenges the court's ruling precluding extrinsic evidence concerning Levoff's alleged history of committing arson. Extrinsic evidence of a prior inconsistent statement is admissible under Fed.R.Evid. 613(b). Rule 613(b) requires that the witness must be "afforded an opportunity to explain or deny" the prior inconsistent statement and the opposite party must be "afforded an opportunity to interrogate him thereon...." Cutler failed to lay the required foundation and the evidence was therefore properly excluded under Rule 613(b). *See United States v. Williams*, 668 F.2d 1064, 1068–69 & n.9 (9th Cir. 1981). No error was committed by the trial judge under Rule 613(b).

■ Cutler does not dispute that the Federal Rules of Evidence do not permit extrinsic evidence of specific acts of a witness' conduct to attack his credibility. Fed. R.Evid. 608(b); *see United States v. Wood*, 550 F.2d 435, 441 (9th Cir. 1976). Instead he argues that extrinsic evidence of Levoff's alleged involvement in prior instances of arson should properly have been admitted under Fed.R.Evid. 404(b) (evidence of specific acts admissible to prove, *inter alia*, motive, intent, or plan). Cutler's statement of the law is correct. *See, e.g., United States v. Batts*, 573 F.2d 599, 602–03 (9th Cir. 1978) (vacating 558 F.2d 513 (9th Cir. 1977). Where, however, a trial judge has excluded evidence, "[e]rror may not be predicated upon [such] a ruling ... unless a substantial right of the party is affected, and ... the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." Fed.R.Evid. 103(a), 103(a)(2). Cutler contends that the following extrinsic evidence should have been admitted: (1) a witness' testimony about Levoff's prior arson activities; (2) a government report; and (3) evidence of other fires.

■ First, the entire offer of proof concerning a witness who would testify to Levoff's prior modus operandi is contained in the following colloquy:

THE COURT: ... One of the questions is, would you be able to show that this has been his [Levoff's] pattern, not only for burning buildings down, but then going and extorting money from people after that?

MR. SHERMAN [Defense Counsel]: He did that with another person.

THE COURT: You are going to have a witness get up on the stand and say this exact thing that happened to him?

MR. SHERMAN: No, no, no. But that he extorts, but that he extorts money.

RT: at 248.

Cutler did not identify any witness nor state the anticipated substance of his testimony.

Second, Cutler argues that the trial judge refused to permit the introduction of extrinsic evidence of a government report. In his opening brief he argues:

The Court . . . refused to permit the defense to introduce any extrinsic evidence on the subject [of Levoff's previous experience with arson activity] under any circumstances. (RT: 287, 291–92). At this point both sides referred to a Government report wherein Foster told government agents that Levoff had admitted blowing up Levoff's motorcycle shop and burning somebody else's business down. (RT: 292). Foster, however, was going to take the Fifth Amendment. (RT: 292).

Brief for Appellant at 18.

The entire record concerning the report is as follows:

THE COURT: Anything else you were going to bring up here?

MR. SHERMAN: Let me think to myself for a second. In the statements of Mr. Levoff, your Honor, I didn't see any admissions to the agents—I'm sure not to Mrs. Stock—about his prior arson activity, but I only have one agent's report. Levoff says he spoke to him many times. I wonder if any of those other reports or if in any other conversations Levoff admitted that he started fires before.

The reason I am saying this, in Mr. Foster's statement which the Government gave me, Levoff admits blowing up his motorcycle shop that he had and burning somebody else's business down. I just wonder if the Government—

THE COURT: You are going to want to put that into evidence?

MR. SHERMAN: Foster's statement? How could I? Foster is not going to testify—Foster, as I understand it, is going to take refuge in the Fifth Amendment.

Is that right?

MS. STOCK: I think what Mr. Sherman is inquiring about is, to our knowledge

has Walter Levoff ever come clean and admitted other arsons, and my answer is no other reports that I am aware of.

THE COURT: All right. Let's go out and try the case. We still have half an hour to go.

RT: at 292–93.

There was no response to Ms. Stock's statement. Cutler's attorney failed to pursue this inquiry and did not specify which document he had in mind, or explain the materiality or admissibility thereof.

Third, Cutler maintains an offer of proof was made that eight buildings at which Levoff had worked burned down. He states that "Again, the defense offer of proof was that four buildings designed by Levoff, plus four others that Levoff had already denied working at all burned down or had fires." (RT: 500). The cited portion of the record relates to the proper scope of cross-examination of Levoff.[2]

Cutler failed to make known to the court any records, documents, or witnesses to substantiate his "offers of proof" that Levoff had burned down other buildings and extorted money from the owners. His offers of proof were inadequate.

## VI. CONCLUSION

The judgment of conviction as to Count Two is reversed and remanded to the district court for a new trial in the event that the government determines that it has facts in its possession concerning the use of an explosive which distinguish this case from *Gere*. The judgment as to the remaining counts is affirmed.

REINHARDT, Circuit Judge, concurring and dissenting:

I concur in the affirmance of Count One and Counts Three through Six. I also agree that we cannot affirm the conviction on Count Two, for the reasons stated in the majority's opinion. I dissent, however, from the majority's decision to remand Count Two for a new trial.

See § IV *supra*.

---

2. As previously discussed, the Court later permitted Levoff to be questioned about the fires.

The district court imposed concurrent sentences on the defendant on all six counts. On appeal, the government urged that we apply the concurrent sentence doctrine as to Count Two and affirm the conviction on that count without reviewing it on the merits.[1] I agree with the majority's decision not to utilize the concurrent sentence doctrine in this case. However, I would vacate the unlawful conviction rather than reversing and remanding for a new trial.

Serious questions exist regarding the use of the concurrent sentence doctrine to affirm convictions without reviewing the merits. In my opinion, we should reexamine that practice and determine how best to treat convictions which have no "adverse collateral legal consequences" for defendants. I have recently set forth the reasons why I believe such a reexamination is required. *United States v. Barker*, 675 F.2d 1055 (9th Cir. 1982) (Reinhardt, J., concurring and dissenting).

I also believe, however, that the majority's decision to reverse Count Two in order to permit a new trial is anomalous. It illustrates one of the continuing problems we face due to the absence of a clear and well-reasoned policy regarding the review of convictions on which concurrent sentences are imposed. Here, the government has assured us that the conviction on Count Two entails no practical consequences to the defendant. Still, we reverse for a new trial in order to allow the government to try to obtain another conviction on that count—a conviction that, the government tells us, would be meaningless.

A retrial and a new appeal on Count Two, in my opinion, will constitute a wholly unnecessary and unjustifiable waste of judicial resources, will place an unwarranted burden on the defendant, and will be a misuse of our limited prosecutorial time, energy, and talent.[2] At oral argument the government requested that we remand Count Two for retrial if we conclude that the conviction on that count cannot be sustained. The only reason the government offered in support of this request was that it wanted a second trial in order to establish a legal principle regarding the elements necessary to show a violation of the particular criminal statute involved. That principle could be established in any number of cases which involve practical consequences for the government and the defendant. I do not think there is any reason to add to the current court congestion in both the trial and appellate courts by encouraging the prosecution of cases in which the government's sole interest is in obtaining the answer to theoretical questions.

Assuming that the government's representations, that an additional conviction would not have any consequences for the defendant, are correct, I see no justification for remanding for a new trial and a possible new appeal. Instead, I would vacate the inconsequential conviction. I would afford the government the right to seek a retrial in cases involving concurrent sentences only if it could establish that a new conviction might result in "adverse collateral legal consequences" to the defendant. Such a rule would be consistent with the practice followed in the District of Columbia, *United States v. Hooper*, 432 F.2d 604 (D.C.Cir.

1. Our reason for setting aside the conviction is that it is clear that, without the disputed stipulation, there is insufficient evidence to uphold it. If it were less clear that the evidence were insufficient, we would probably affirm the conviction under the concurrent sentence doctrine without considering the merits. *See, e.g., United States v. Ford*, 632 F.2d 1354, 1365 (9th Cir. 1980), *cert. denied*, 450 U.S. 934, 101 S.Ct. 1399, 67 L.Ed.2d 369 (1981); *United States v. Martin*, 599 F.2d 880, 887 (9th Cir.), *cert. denied*, 441 U.S. 962, 99 S.Ct. 2407, 60 L.Ed.2d 1067 (1979). Similarly, had Count Two been challenged on different grounds, to which the

answer was not so apparent, we would probably affirm under the concurrent sentence doctrine.

2. As the government said in its reply memorandum, "As a result, judicial resources would further be expended in pursuing what would ultimately be a meaningless issue because, as stated before, even if Cutler prevailed, his sentence would not be effected [sic] in the slightest." Later in its memorandum the government said that adjudication upon remand would constitute "a meaningless gesture."

1970), and the technique we have on occasion used ourselves. *United States v. Fishbein,* 446 F.2d 1201 (9th Cir. 1971), *cert. denied,* 404 U.S. 1019, 92 S.Ct. 683, 30 L.Ed.2d 667 (1972).

I should add that I have serious doubts as to the correctness of the government's view that the absence of "adverse collateral legal consequences" (as that term is used for purposes of the concurrent sentence doctrine), means that a conviction involves no practical consequences for the defendant, and that it does not affect the defendant's rights.[3] For that reason, I would probably either reach the merits of a conviction in all cases in which concurrent sentences are imposed, *see United States v. Ruffin,* 575 F.2d 346, 361 (2d Cir. 1978), or apply the *Hooper* rule. In any event, the case before us illustrates the necessity for our circuit to develop a reasoned, rational, and consistent policy for dealing with cases in which application of the concurrent sentence doctrine is urged.

---

**3.** *See discussion* in *United States v. Vargas,* 615 F.2d 952, 959–60 (2d Cir. 1980).