UNITED STATES of America, Appellee,

v.

Allen C. MORROW, Appellant.

**Appeal of Sarah F. MORROW.**

Nos. 82–3477, 82–3478.

United States Court of Appeals, Third Circuit.

Argued July 21, 1983.

Decided Sept. 16, 1983.

As Amended Sept. 23, 1983.

Certiorari Denied Jan. 16, 1983. See 104 S.Ct. 975.

---

* Hon. Carol Los Mansmann, United States District Judge for the Western District of Pennsylvania, sitting by designation.

Before ADAMS and HIGGINBOTHAM, Circuit Judges, and TEITELBAUM *, Chief Judge.

## OPINION OF THE COURT

TEITELBAUM, Chief District Judge.

Appellants, Allen C. and Sarah F. Morrow, husband and wife, have appealed from their conviction in the Middle District of Pennsylvania [1] of one count of conspiracy and twelve substantive counts of mail fraud in connection with the intentional destruction of an adult bookstore in Johnstown, Pennsylvania and their subsequent efforts to collect on fire insurance policies covering the property. In this appeal the Morrows principally have pressed two interrelated arguments. First they contend that Count I of the indictment is duplicitous, that is, that Count I charges two separate conspiracies with two different objects permitting the jury to convict even if split as to which conspiracy and object had been proven. Second, they contend it was error to submit one of these conspiracy charges to the jury because it was incorrectly grounded in a theory that a federally proscribed explosive device had been used. They aver that the district court misinterpreted the scope of federal law and therefore permitted the jury to consider a charge for which there was insufficient evidence as a matter of law. Essentially the Morrows argue that

David Dart Queen, U.S. Atty., M.D. Pa., Harrisburg, Pa., Albert Murray, Jr. (argued), Asst. U.S. Atty., Scranton, Pa., for appellee.

Malcolm M. Limongelli, Wilkes-Barre, Pa., William E. Seekford, White & Murphy, Joseph F. Murphy, Jr. (argued), Towson, Md., for appellants.

---

* Honorable Hubert I. Teitelbaum, Chief Judge of the United States District Court for the Western District of Pennsylvania, sitting by designation.

1. On December 14, 1983, the author of this opinion accepted a conditional plea of guilty from the appellant, Allen C. Morrow, to a two count indictment at Criminal No. 81–178 in the Western District of Pennsylvania. Pursuant to a plea agreement, the government recommended that any sentence to be imposed in the Western District run concurrently with any sentence which might thereafter be imposed in proceedings in the Middle District of Pennsylvania. No other recommendation was made. Allen Morrow was sentenced to a term of imprisonment of 5 years on Count I and 1 year on Count II to run consecutively with each other and concurrently with any sentence which might thereafter be imposed in the Middle District of Pennsylvania. He was also fined a total of $10,000.

Having reserved for appeal the denial of his motion to dismiss for prosecutorial vindictiveness by his conditional plea, Allen Morrow pursued his appeal. He argued that the prosecution in the Western District of Pennsylvania was vindictive because it had been initiated only after he had insisted on his right to a jury trial on the charges pending in the Middle District of Pennsylvania. On September 22, 1982, the judgment of conviction was affirmed. *United States v. Morrow,* 692 F.2d 750 (3d Cir.1982).

At oral argument in the instant appeal, counsel were informed of the participation of the author of this opinion in the proceedings in the Western District of Pennsylvania. At that time counsel indicated no motion for recusal would be filed and recusal was waived. Having independently considered this matter, we conclude that there is no basis for recusal under 28 U.S.C. § 47 or § 455 (1976).

arson alone was not proscribed by federal law in July of 1978 and that the government's proof suggested, at best, only arson and not the use of a federally prohibited explosive.

### I.

To properly consider these claims, it is necessary to review only that evidence establishing the method by which the bookstore was destroyed. This evidence consists of the testimony of three individuals who actually destroyed the building, Franklin Kiefer, Donald Bonsal and Frank Cislo, and the testimony of the government expert on explosives and incendiary devices, Warren L. Parker.

The evidence established that Kiefer and Bonsal purchased twenty gallons of kerosene for the purpose of destroying the adult bookstore in Johnstown. They contacted Cislo, the manager of the bookstore, and enlisted his assistance in entering the building without activating a burglar alarm. The containers of kerosene were then secreted in cardboard boxes and brought to the bookstore. Subsequently, Kiefer and Bonsal determined that to insure complete destruction of the building several holes would have to be made in the walls to provide a better draft. The three men then made appropriate holes, spread some papers, and left the building. Later that evening Bonsal entered the building with keys provided by Cislo. Bonsal poured kerosene in several large puddles, soaking the papers and other combustible materials, on each of the three floors in the building. These puddles he connected with trails of kerosene. Upon leaving the building Bonsal ignited the kerosene. Shortly thereafter the build-

ing was ablaze, and smoke had risen several hundred feet in the air.

Cognizant of the above evidence, the government expert on explosives and incendiary devices, Warren Parker of the Bureau of Alcohol, Tobacco and Firearms, testified that in his opinion the combination of materials described above constituted an incendiary device and therefore an explosive under federal law. Specifically, Parker indicated that the entire building filled with combustible materials, fuel oil, and kerosene-soaked papers, combined with draft holes and trails of kerosene between piles of combustible materials constituted an incendiary device.

### II.

■ The Morrows rely on *United States v. Cutler,* 676 F.2d 1245 (9th Cir.1982); *United States v. Gere,* 662 F.2d 1291 (9th Cir.1981); and *United States v. Birchfield,* 486 F.Supp. 137 (M.D.Tenn.1980), to argue that notwithstanding Parker's expert testimony, the evidence discloses no violation of 18 U.S.C. § 844(h) as that provision existed in July of 1978,[2] but instead suggests merely arson in violation of state law.

In assessing this argument the starting point must be, as it always is in questions of statutory interpretation, the words of the statute itself. The definition of explosive for purposes of 18 U.S.C. § 844(h) is contained in 18 U.S.C. § 844(j). While this provision consists of a single sentence, it is convenient to divide the section into three parts:

I    "gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (other than electric circuit breakers), detonators and

---

**2.** At that time 18 U.S.C. § 844(h) (1976) provided, "whoever (1) uses an explosive to commit any felony which may be prosecuted in a court of the United States . . ." is guilty of an offense against the United States. Since that time this provision has been amended and now provides, "Whosoever (1) uses a fire or an explosive to commit a felony which may be prosecuted in a court of the United States . . ." is guilty of an offense against the United States.

The addition of the words "a fire" to 18 U.S.C. § 844(h) (1976) as amended by the Anti-

Arson Act of 1982, Pub.L. 97–298, 96 Stat. 1319 (1982), clearly renders meaningless arguments like those of the appellants in similar cases after the effective date of the amendment, October 12, 1982, since use of either a fire or an explosive to commit a felony is a crime. *United States v. DeLuca,* 692 F.2d 1277 (9th Cir. 1982); H.R.Rep. No. 97–678, 97th Cong., 2d Sess. *reprinted in* 1982 U.S.Code Cong. & Ad. News 2631, 2632.

other detonating agents, smokeless powders,

II other explosive or incendiary devices within the meaning of paragraph (5) of section 232 of this title,[3]

III and any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device, or any part thereof may cause an explosion.

Appellants rely on the restrictive interpretation of this statute contained in *United States v. Gere, supra.* In *Gere,* the appellant challenged his conviction of an offense under 18 U.S.C. § 844(i)[4]. The evidence established that Gere had destroyed a warehouse by use of trails of photocopying fluid and fluid-soaked materials to ignite simultaneous fires throughout the warehouse. Looking solely to that portion of the definition of explosives identified above as Part II of 18 U.S.C. § 844(j), the Court of Appeals for the Ninth Circuit concluded that Congress did not intend to pass a general federal arson statute, but a more narrow enactment designed only to counter the specific evil of bombing. Since the court found no reason to believe the federal law was meant to overlap state arson law, it reversed the conviction in that case. Appellants have urged this Court to adopt this conclusion, apply it to the facts of the instant appeal, and vacate their conviction for conspiracy in Count I.

We decline to do so finding a more persuasive analysis in *United States v. Agrillo-Ladlad,* 675 F.2d 905 (7th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 66, 74 L.Ed.2d 67 (1982). In that case, the evidence established that trails of newspapers were laid out in rows and soaked with naptha. These materials were ignited and within fifteen minutes the windows had blown out, pipes were bent, and the building totally destroyed. An expert witness for the government testified that an uncontained explosion had occurred. As part of his analysis, the expert testified that the naptha gave off certain vapors that built up in the structure and combined with the air to form an explosive mixture.

Turning to the definition of explosive in 18 U.S.C. § 844(j), the Court noted that the articles that had been used to destroy the building seemed to be encompassed within the plain meaning of the term incendiary bomb which is incorporated by reference into Part II of the definition and within the plain meaning of Part III of the definition. Despite the apparent inclusion of these articles within the plain meaning of the definition of explosive, the Court also examined the legislative history in depth. This examination found significant support for a comprehensive definition of explosive specifically including combinations of ordinary products that could be assembled to explode. Moreover, the court found that Congress knew that the definition adopted would overlap to some extent with state arson law. This comprehensive examination demonstrates that the rationale of *Agrillo-Ladlad,* and not of *Gere,* represents the correct understanding of 18 U.S.C. § 844(j).[5]

3. Part II above cross-references 18 U.S.C. § 232(5) (1976) which provides:

The term "explosive" or "incendiary device" means (A) dynamite and all other forms of high explosives, (B) any explosive bomb, grenade, missile, or similar device, and (C) any incendiary bomb or grenade, fire bomb, or similar device including any device which (i) consists of or includes a breakable container including a flammable liquid or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and

(ii) can be carried or thrown by one individual acting alone.

4. The definition of explosive is the same for purposes of 18 U.S.C. § 844(h) and 18 U.S.C. § 844(i) and the *Gere* decision turns on the interpretation of 18 U.S.C. § 844(j).

5. We agree too with the conclusion of the United States Court of Appeals for the Seventh Circuit that the recent amendment of 18 U.S.C. § 844 by the Anti-Arson Act of 1982, Pub.L. 97–298, 96 Stat. 1319 (1982) does not necessarily implicate a change in scope as much as a clarification of the original meaning of that

In reaching this conclusion, this Court finds itself in agreement with the majority of other Courts of Appeals to consider this question. *See United States v. Bunney,* 705 F.2d 378 (10th Cir.1983); *United States v. Xheka,* 704 F.2d 974 (7th Cir.1983); *United States v. Poulos,* 667 F.2d 939 (10th Cir. 1982); *United States v. Hewitt,* 663 F.2d 1381 (11th Cir.1981); *United States v. Hepp,* 656 F.2d 350 (8th Cir.1981).[6]

Having found a comprehensive construction of the definition of explosive to be in order, the Court finds the evidence sufficient in the instant case to conclude that the materials assembled by Kiefer, Bonsal and Cislo were incendiary bombs within Part II of the definition of explosive. In light of Parker's testimony that an explosion could occur when a short trail of kerosene was ignited, the Court finds an explosive existed within Part III of the definition as well. The Court rejects appellants' arguments that the structure itself could not constitute part of the incendiary device. The structure in *Agrillo-Ladlad* was essential to the creation of an explosion. The structure operated to contain the naptha vapors permitting a sufficiently explosive mixture of naptha vapor and air to be created. Again, this is consistent with the legislative history. *See United States v. Agrillo-Ladlad, supra,* 675 F.2d at 909 n. 5.

### III.

■■■ Having found that the evidence was sufficient to support a conviction for conspiracy to violate 18 U.S.C. § 844(h), it is appropriate to consider the appellants' second challenge to conviction under Count I of the indictment: the claim of duplicity. Appellants have urged this Court to conclude that conspiracy to commit mail fraud and conspiracy to use an explosive to commit mail fraud are separate and distinct conspiracies. This Court cannot agree. The essence of conspiracy is an agreement. Whether the agreement is to commit one crime or several, there is still but one agreement and one conspiracy. In other words, a single conspiracy may have multiple goals and objectives. *Braverman v. United States,* 317 U.S. 49, 53–54, 63 S.Ct. 99, 101–102, 87 L.Ed. 23 (1942).

That is the case in the instant appeal. The agreement proven was to destroy a building and to collect, by use of the mails, insurance proceeds payable only for accidental destruction of the building. Destruction of the building was a prerequisite to the submission of an insurance claim. Without the submission of the insurance claim, destruction of the building would have been a futile act. Under these circumstances, the Court finds the allegations of duplicity to be without merit.

### IV.

Having considered the remaining contentions of error, that the district court erred in admitting evidence of other crimes, in denying Sarah Morrow's request for severance, in permitting a witness to explain why he was biased against Allen Morrow, in prohibiting extrinsic evidence of Keifer's criminal activities and government activities on his behalf, and in prohibiting defense counsel from reading portions of trial transcript during closing argument, the Court finds these contentions without merit.

For the foregoing reasons, judgments of conviction of Allen C. Morrow and Sarah F. Morrow will be affirmed.

section. *United States v. Xheka,* 704 F.2d 974, 979, n. 2 (7th Cir.1983); *United States v. Gelb,* 700 F.2d 875, 882 (2d Cir.1983) (Van Graafeiland, J., *dissenting*). *See* H.R.Rep. No. 97–678, 97th Cong., 2d Sess., *reprinted in* 1982 U.S. Code Cong. & Ad.News 2631. *But see United States v. Gelb, supra,* 700 F.2d at 879.

**6.** *But see United States v. Gelb,* 700 F.2d 875 (2d Cir.1983). Interestingly enough, while the Court of Appeals for the Ninth Circuit continues to follow *Gere,* that Court recently expressed reservations about the correctness of that decision in *United States v. DeLuca,* 692 F.2d 1277 (9th Cir.1982). There the Court wrote, "Were we considering this issue free from our prior decisions on [18 U.S.C.] § 844, we would adopt the government's position and affirm the explosives convictions." *Id.* at 1280.