**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**George Dan POULOS,**
**Defendant-Appellant.**

**No. 80–1574.**

United States Court of Appeals,
Tenth Circuit.

Argued Sept. 30, 1981.

Decided Jan. 7, 1982.

Bryson E. Mills, Wichita, Kan., for defendant-appellant.

Jackie N. Williams, Asst. U. S. Atty., Wichita, Kan. (James P. Buchele, U. S. Atty., Wichita, Kan., with her on the brief), for plaintiff-appellee.

Before SETH, Chief Judge, and HOLLOWAY and SEYMOUR, Circuit Judges.

SETH, Chief Judge.

Defendant George Dan Poulos appeals his jury conviction of conspiracy to maliciously damage or destroy, by means of an explosive, a building and personal property therein used in interstate commerce, and of malicious damage or destruction of that same building and personal property by explosive in violation of 18 U.S.C. § 844(i).

The two-count indictment charged the defendant and Mr. Kim T. Kilgore with conspiracy to violate and substantively violating 18 U.S.C. § 844(i) by attempting to destroy a building at 917 East Harry Street, Wichita, Kansas, by means of an explosive. That property was then being used by Home Living, a business undisputedly affecting interstate commerce. This alleged illegal activity is prohibited under the Organized Crime Control Act of 1970. Specifically, 18 U.S.C. § 844(i) imposes penalties on "[w]hoever maliciously damages or destroys, or attempts to damage or destroy, by means of an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce."

The office and its contents were damaged by fire on July 28, 1976. In February 1979 John Douglas Kralik became an informant and admitted to federal officials that he was responsible for the 1976 fire at Home Living. He related that he was solicited by defendant Poulos to destroy an office within that building. Kim T. Kilgore had previously contacted defendant Poulos and represented that he owned a rental business similar to Home Living. He told the defendant that the owner of Home Living was a former employee of his who had taken some of Mr. Kilgore's files to set up Home Living. He told the defendant he would pay $750.00 for the return or destruction of the files. Thereupon Mr. Poulos contacted John Kralik who attempted the job.

John Kralik testified that he stuffed styrofoam into two glass two-liter Cola bottles and filled the bottles with gasoline. Upon breaking into Home Living through the back door he put one bottle down in the center of the room and began pouring the contents of the second bottle around the very small back room of the two-room of-

fice. After almost emptying the first bottle the gas was ignited by the pilot light of a water heater and as the witness said "it went whoom." Mr. Kralik escaped from the building by jumping through the plate glass front door. John Kralik also testified he had taken along some fire starters, "you know, they've got a little fuse on the end of them, and I was going to put a cigarette on the end, and when the cigarette burned down it would ignite the fuse and this thing would flare and set the fumes off."

After indictment and upon motions of the government and the two defendants, Mr. Poulos and Mr. Kilgore, the case was severed and the defendants were to be tried separately. Just prior to his trial Mr. Kilgore pled guilty to misprision of felony, and he agreed to testify at the trial of Mr. Poulos, which he did.

At defendant's trial the jury returned a verdict of guilty on both counts. He now appeals his conviction. He claims the trial court should have struck down the indictment or granted judgment of acquittal because the portion of 18 U.S.C. § 844(j) relied on by the prosecution and set out in the jury instructions is void for vagueness. In its entirety 18 U.S.C. § 844(j) read:

> "(j) For the purposes of subsections (d), (e), (f), (g), (h), and (i) of this section, the term 'explosive' means gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (other than electric circuit breakers), detonators, and other detonating agents, smokeless powders, other explosive or incendiary devices within the meaning of paragraph (5) of section 232 of this title, and any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion."

Paragraph (5) of 18 U.S.C. § 232 read:
> "(5) The term 'explosive or incendiary device' means (A) dynamite and all other

forms of high explosives, (B) any explosive bomb, grenade, missile, or similar device, and (C) any incendiary bomb or grenade, fire bomb, or similar device, including any device which (i) consists of or includes a breakable container including a flammable liquid or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and (ii) can be carried or thrown by one individual acting alone."

The portion of 18 U.S.C. § 844(j) with which the court instructed the jury and which defendant claims is unconstitutionally vague follows in the context of the instruction given the jury:

> "You are instructed that Section 844(j) of Title 18 U.S.C. defines 'explosive' in part as:
>
>> 'any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportion, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion.'
>
> "To find beyond reasonable doubt that the property in question was destroyed or damaged by an explosive, you need not find that an explosion actually occurred. You need only find that the substance as used was such that when ignited 'may cause an explosion.' The term 'explosion' in the statute quoted above is used in its customary or ordinary sense, that is, an explosion is a rapid expansion of gases caused by a rapid combustion of a material, which may cause a sharp noise or report."

█ The defendant claims that this portion of 18 U.S.C. § 844(j) is void because the terms expressing the prohibitive conduct are so vague men of common intelligence must guess at its meaning and differ as to its application. In addition the defendant argues this language is inadequate to inform potential defendants of the criminal nature of their possible behavior. We

cannot agree. This portion of section 844(j) is necessarily broad. It is meant to cover the numerous possible explosives not specifically listed. Any person would conclude that the pouring of gasoline around a room with the intention of igniting it or the fumes with an incendiary device was prohibited by sections 844(i) and (j). It is common knowledge that gasoline is highly combustible and capable of exploding. The government's expert witness testified to the fact that gasoline can be explosive, and it does fit under this statute. It is clear that gasoline, when used in an attempt to destroy or damage property, in these circumstances does come within the definition of explosive in section 844(j). The section, we must conclude, is not void for vagueness.

■ The defendant also argues that the verdict was contrary to the weight of the evidence and not supported by substantial evidence. Mr. Poulos asserts that there was no danger caused by an explosive, but only a fire fueled by gasoline and this constituted arson. In determining whether the evidence was sufficient to sustain the conviction we must view the evidence, direct and circumstantial, as well as all reasonable inferences to be drawn therefrom, in the light most favorable to the prosecution. *United States v. Blitstein*, 626 F.2d 774 (10th Cir.); *United States v. Twilligear*, 460 F.2d 79 (10th Cir.).

■ We have carefully reviewed the record. At trial the government had John Kralik describe the scene of his attempted destruction of Home Living. Wichita Police Department officer Hartley related hearing what sounded to be an explosion, or a minor explosion, upon his arrival at 917 East Harry Street. Bruce Bissell lived across the street from Home Living in July 1976 and he testified to being awakened on the night in question by a "boom." The government's expert witness, Mr. Gleason, testified that gasoline can be an explosive if an oxidizer is present. Further Mr. Gleason stated that the ignition in Home Living "resulted in a flash fire, which is a form of explosion." The defendant's expert witness, Mr. Davis, testified that he found no evidence of an explosion. However, on cross-examination Mr. Davis was asked to read from a publication on arson and explosions which stated:

"The three basic rates of explosions are listed here in the order of their intensity: 1. Flash fires. 2. Explosions. 3. Detonations. A flash fire, in most cases, would probably be an explosion if its volume or pressure were confined or if its burning speed were increased slightly. Generally a flash fire confined within a building will be an explosion, while the same flash fire if in the open would only be a rapid or flash fire. If the fire in the open could be speeded up, the surrounding air mass would confine it enough for it to become an explosion."

The prosecution asked Mr. Davis if he agreed with the statement and he responded: "I have no real qualms with that."

The evidence supporting the jury verdict is substantial. We have considered appellant's other contentions and find them to be without merit.

AFFIRMED.