UNITED STATES of America,
Plaintiff-Appellee,

v.

Frank M. REED, Jr., and David L. Smith, Defendants-Appellants.

Nos. 81–1246, 81–1247, 80–1706 and 80–1709.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 6, 1982.

Decided Feb. 24, 1984.

As Amended May 1, 1984.

Richard Kibby, Jerry Miller, James L. Swartz, Asst. U.S. Attys., Anchorage, Alaska, for plaintiff-appellee.

Walter Share, Joseph P. Palmier, William P. Bryson, Anchorage, Alaska, for defendants-appellants.

Before GOODWIN and POOLE, Circuit Judges, and EAST,* District Judge.

POOLE, Circuit Judge:

Appellants Frank Reed and David Smith appeal their convictions under 18 U.S.C. § 844(i) for conspiracy to damage and destroy, and maliciously damaging and destroying, property used in interstate commerce by means of an explosive or incendiary device, and for failure to register a firearm under 26 U.S.C. § 5861(d). A prior indictment returned June 5, 1980, in the District of Alaska, against Reed, Smith, and three others, was dismissed because the court found "substantial irregularities" before the grand jury—"the presence of innuendos which were irrelevant to the indictment." Reed and Smith were reindicted on September 26, 1980, and their case was tried to a jury. A mistrial was declared after the jury deadlocked. The case was then transferred to the Southern District of California for retrial. On April 6, 1981, following a second jury trial in San Diego, Reed and Smith were convicted of charges relating to the burning of Bobby McGee's restaurant in Anchorage, Alaska. (Counts I, II, III, and V).[1] They were ac-

---

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. Count I: Conspiracy (18 U.S.C. § 371) maliciously to damage and destroy by means of an explosive property known as Bobby McGee's and Donovan's in violation of 18 U.S.C. § 844(i).
Count II: On October 1, 1979, the defendants did maliciously damage and destroy, and attempted to damage and destroy, by means of an explosive, property known as Bobby McGee's restaurant. 18 U.S.C. §§ 844(i) and (j); 18 U.S.C. § 232(5).
COUNT III: On October 15, 1979, defendants aided and abetted the malicious damage and destruction, and attempted to damage, by means of an explosive, property known as Bobby McGee's restaurant. 18 U.S.C. §§ 844(i) and (j).
COUNT V: On October 1, 1979, defendants possessed an unregistered firearm. 26 U.S.C. §§ 5861(d), 5845(a)(8) and (f).

quitted of attempted burning of Donovan's, another Anchorage establishment. (Counts IV and VI). This appeal was taken from their convictions on Counts I, II, III, and V.

Viewing the evidence in the light most favorable to the Government, the prevailing party, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1941), the following facts were established.

In August 1979, Reed and Donal McDaniel discussed a plan to destroy Bobby McGee's, a restaurant operated by one of Reed's business competitors. In mid-September 1979, McDaniel met with Jerry Green who agreed to burn McGee's for $15,000. Green then met with David Smith, who was to do the actual burning.

On October 1, 1979, an unsuccessful attempt was made to destroy the building housing Bobby McGee's by fire. The apparent source of the fire was paper-wrapped, gasoline-filled beverage cans in the tops of which holes had been punctured. The cans had been placed around the exterior walls of the building and ignited. The damage was primarily to the exterior, but some of the fire did burn through to the interior.

On October 15, 1979, a second attempt to destroy the building succeeded. The Government charged that the destruction was accomplished by pouring gasoline along the interior and exterior walls and floors of the building, and igniting it by a delay fuse.

For the reasons herein set forth, we affirm the convictions for conspiracy (Count I) and for attempted violation of § 844(i) based on the October 1 fire (Count II), but reverse the convictions for violation of § 844(i) based on the October 15 fire (Count III). We also reverse the convictions under the National Firearms Act (Count V).

I. *Convictions Under Section 844(i) of the Organized Crime Control Act*

It was the Government's theory that the hole-punched cans and delay fuse constituted "explosive" or "incendiary devices" within the meaning of 18 U.S.C. § 844(i) and (j). Appellants challenge the statutory coverage.

In enacting section 844(i), Congress proscribed the malicious damage or destruction of a building by means of an "explosive." The definition of "explosive" includes an "incendiary device." In several recent cases we have had occasion to consider these terms. In *United States v. Gere,* 662 F.2d 1291 (9th Cir.1981), the defendant was convicted under section 844(i). A fire had been set with a delay fuse comprised of "trailers" of photocopier fluid and fluid-soaked materials. In holding that this did not constitute an explosive device, we adopted a narrow reading of the statute stating that "[t]he purpose of [section 844(i)] was to protect buildings against the specific evil of bombing. There is no indication that it was meant to overlap state arson law . . . ." *Id.* at 1296; *accord United States v. DeLuca,* 692 F.2d 1277 (9th Cir.1982); *United States v. Cutler,* 676 F.2d 1245 (9th Cir.1982).

Subsequent to our opinion in *Gere,* Congress amended section 844(i) so as specifically to include arson "by means of fire or an explosive." Anti-Arson Act of October 12, 1982, Pub.L. No. 97–298, § 2 (codified at 18 U.S.C. § 844(i) (1982)). The House Judiciary Committee Report specifically references *Gere* in making clear that the intent of the statute was to cover both explosive and non-explosive fires. H.Rep. No. 97–678, 97th Cong., 2d Sess. 2 n. 6 (1982), *reprinted in* 1982 *U.S.Code Cong. & Ad. News* 2631, 2632 n. 6. Even before the amendment other federal circuits had given a broader interpretation of the statute in finding the existence of an explosive. *See e.g., United States v. Agrillo-Ladlad,* 675 F.2d 905 (7th Cir.), *cert. denied,* 459 U.S. 829, 103 S.Ct. 66, 74 L.Ed.2d 67 (1982) (naphtha-soaked newspapers spread across the floor and ignited by a burning piece of paper); *United States v. Hepp,* 656 F.2d 350 (8th Cir.1981) (delayed ignition device consisting of a cigarette inserted in a matchbox and suspended by a thread into a gasoline laden atmosphere). Nevertheless, *Gere* was controlling law in this circuit when the appellants were convicted and when they appealed, and we are bound to follow its nar-

rower interpretation of the statute. *United States v. DeLuca,* 692 F.2d 1277, 1280 (9th Cir.1982).

### A. Fire on October 1

■ We conclude that the means by which the October 1 fire was set come within the statutory definition of "explosive" or "incendiary device," and that such means significantly distinguish these facts from those of *Gere.* First, section 844(j) defines "explosive," as used in section 844(i), to include "incendiary devices" that contain "any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packaging that ignition by fire, ... *may* cause an explosion." (emphasis added). Explosive is defined in *Webster's Third New International Dictionary* 802 (16th ed. 1971) as

> a substance that on ignition by heat, impact, friction, or detonation undergoes very rapid decomposition (as combustion) with the production of heat and the formation of more stable products (as gases) which exert tremendous pressure as they expand at the high temperature produced.

The gasoline-filled cans fit this definition. When lighted by heat and flame from the burning paper, gasoline would burn rapidly, producing heat that would cause it to change from its liquid state to a gaseous state. Because the gas was contained, the rapid expansion and combustion were likely to produce "tremendous pressure" on the container and make the popping noise typically associated with an explosion. *United States v. Poulos,* 667 F.2d 939, 941 (10th Cir.1982) (defining explosion as "a rapid expansion of gases caused by a rapid combustion of a material, which may cause a sharp noise or report").

Second, under 18 U.S.C. § 232(5), which is incorporated into the section 844(j) definition, an explosive or incendiary device includes:

> (C) any incendiary bomb or grenade, fire bomb, or *similar device,* including any device which (i) consists of or includes a breakable container including a flamma-

ble liquid or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and (ii) can be carried or thrown by one person acting alone. (emphasis added).

The facts show that on October 1, an attempt was made to burn the building using gasoline-filled cans wrapped in paper into the tops of which holes had been punctured. This appears to be a "similar device" which very closely parallels the example set forth in the statute. In effect, it was a container whose "wick" consisted of the paper wrapping, and which could be carried or thrown by one person. The only distinction between this device and that described in the statute is that this container was not breakable. The difference is insignificant because the punctured holes from which the expanding gas and flame would seek escape serve the same purpose as would a breakable container. The openings would allow the flammable liquid to combine with air to aid combustion and to escape the container when thrown. In fact, this device could be likened to the "Molotov cocktail" described in the statutory example. 18 U.S.C. § 232(5).

Finally, setting a fire by means of a container of gasoline ignited through an improvised wick is unlike the process used in *Gere,* which involved a flammable liquid poured in a building and ignited. Accordingly, we find that the gasoline-filled cans here, designed for ready combustion, are within the definition of explosive or incendiary device under 18 U.S.C. § 844(i). We affirm the conviction on Counts I and II based on the events of the October 1 fire.

### B. Fire on October 15

■ The method used by the appellants in the October 15 fire, however, did not significantly differ from that in *Gere* and *United States v. Cutler,* 676 F.2d 1245 (9th Cir.1982). Bound by the law of those cases in the presence of indistinguishable facts, we have no choice but to reverse the convictions relating to October 15 and charged in Count III.

The evidence showed that the October 15 fire was accomplished by pouring gasoline along the walls and on the floors of the building and igniting it by means of delay fuse. In both *Gere* and *Cutler* a flammable liquid was similarly poured in a building and lighted by a delayed ignition process roughly resembling a fuse. Defendants in *Gere* set the fire by "trailers" of photocopier fluid and fluid-soaked materials that were in effect "fuses." In *Cutler* approximately 20 gallons of gasoline were spread throughout the warehouse. A "trailer" of gasoline was poured extending from the warehouse into the alley, where it was ignited. Both cases essentially involved spreading flammable liquid around a room and igniting it by delayed ignition. The same was done here. Thus, following *Gere* we find no violation within the contemplation of section 844(i) in connection with the October 15 fire. *Accord United States v. Gelb,* 700 F.2d 875, 877–79 (2d Cir.) *cert. denied,* —— U.S. ——, 104 S.Ct. 167, 78 L.Ed.2d 152 (1983) (Uncontained gasoline is not an "explosive" or "incendiary device" within the meaning of section 844(j).). We reverse the convictions under Count III.

## C. Jury Instructions

Appellants contend that the jury instructions defining "explosive" or "incendiary device" under section 844(i), to which they objected, constitute reversible error. The trial judge instructed the jury as follows:

> The term "explosive or incendiary device" means incendiary bomb, grenade, fire bomb, or similar device. Incendiary device is any article, substance or combination of articles or substances capable of generating fire in a combustible material.

RT 2264 (second trial). Since we have found the evidence sufficient to support the convictions for the October 1 fire, the challenge to the instructions presents the issue whether the instructions as a whole were misleading or inadequate to guide the jury's determination. *United States v. Pazsint,* 703 F.2d 420, 424 (9th Cir.1983). Error in the instructions requires reversal only if there is a "reasonable possibility that the error materially affected the verdict." *United States v. Herbert,* 698 F.2d 981, 986 (9th Cir.1983).

The flammable substances involved in *Gere,* were "capable of generating fire in a combustible material" (material soaked in flammable liquid), but were nonetheless held not to be an incendiary device under the statute. Appellants correctly point out that the instruction given here was broad enough to allow even a common match to be held an "incendiary device." But, as applied to the specific facts at issue in the October 1 burning, there was no possibility of misleading the jury. The device actually used was altogether unlike a match, and clearly within the parameters of the statute. Furthermore, the instruction was preceded by an exposition of the statutory language that identified the category of devices covered. The trial judge advised that "[t]he term 'explosive or incendiary device' means incendiary bomb, grenade, fire bomb or similar device." RT 2264 (second trial). It is highly unlikely that the jury could have reached its finding that the device in question constituted an explosive under the statute by a simplistic analogy to a mere match. Moreover, the jury finding was reasonable. We see no real possibility that the jury verdict was materially affected; therefore, we do not find reversible error in the instruction.

## D. Vagueness

Appellants contend that 18 U.S.C. § 844(j) is overbroad and unconstitutionally vague because it fails to give notice that gasoline-filled cans could constitute an explosive or incendiary device. Since we have found the device used was very similar to the statutory description, we believe that the section provided adequate notice of the proscribed conduct. The statute is not unconstitutional as applied. *United States v. Poulos,* 667 F.2d at 941–42.

## II. *National Firearms Act Violation*

Appellants challenge their convictions on Count V under 26 U.S.C. §§ 5861(d) and 5845(f), which prohibit possession of any unregistered "firearm" in-

cluding a "destructive device." The unregistered firearms charged against them consisted of the paper-wrapped, gasoline-filled beverage cans, with holes punctured in the tops, which were involved in Counts I and II. Appellants argue that there was insufficient evidence for the jury to find that such cans are "destructive devices" under § 5845(f). We agree, and reverse the convictions under Count V.

A "firearm" for purposes of § 5861(d) includes a "destructive device," which is defined in § 5845(f) as:

Any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellant charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; ... and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled. The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon.

This Circuit has passed upon the meaning of the term "destructive device" as it is used in § 5845(f). In at least two cases we have examined both the nature of the device and the intent with which it was constructed and used. In *United States v. Oba,* 448 F.2d 892, 893 (9th Cir.1971), *cert. denied,* 405 U.S. 935, 92 S.Ct. 979, 30 L.Ed.2d 811 (1972) ("[S]even sticks of dynamite wrapped with copper wire and equipped with a length of black dynamite fuse, together with dynamite caps" constituted a destructive device.), we emphasized the statutory provision that such a device would include "any combination of parts either designed or intended for use in converting any device into a destructive device." In *United States v. Peterson,* 475 F.2d 806 (9th Cir.), *cert. denied,* 414 U.S. 846, 94 S.Ct. 111, 38 L.Ed.2d 93 (1973), we held that a device consisting of fusee flare segments, gun powder, cotton rope and

binding tape was a destructive device, and further the device could be likened to a commonly used civilian weapon of crime and violence.

Our cases thus have looked to the apparent purpose for which the device was created, and to the manner of its actual use. We do the same in this case. Following that path, we find no authority in our decided cases and no basis upon the facts presented for concluding that the paper-wrapped, gasoline-filled cans before us constituted the kind of destructive device which amounted to a firearm. as described in § 5845(f).

Since the term destructive device in § 5845(f) specifically excludes "any device which is neither designed nor redesigned for use as a weapon," our inquiry is directed to a pragmatic analysis of the kind of device involved. These cans were not in fact used as weapons.. They could not well have been so used, for it would have been difficult and dangerous for a person to hold such a can, ignite the paper and then successfully use or throw the can without serious harm to himself. Nothing in the record indicates that a device of this kind, although capable of causing great incendiary damage, bears the traditional indicia of a weapon, or had such a possible use.

We conclude that a reasonable jury could not have found beyond a reasonable doubt that the cans were in fact designed or used as weapons. Accordingly, we reverse the convictions under the National Firearms Act as contained in Count V of the indictment. For this reason it becomes unnecessary to reach appellants' challenge to the constitutionality of that statute.

### III. *Rulings on Discovery*

#### A. Municipal Arson Reports

Appellants sought a subpoena duces tecum to be directed to the City of Anchorage to compel production of investigative reports concerning incidents of alleged arson that occurred in the same general period as the fires at McGee's. They asserted that such information would aid their defense by indicating that certain others, named as

co-defendants but not on trial, might have been contemporaneously involved in other arson activities and thus might have had independent motives to burn McGee's. The trial judge reviewed the documents *in camera*, denied the application and quashed the subpoena. Appellants challenge that ruling.

Federal Rule of Criminal Procedure 17(c) requires a showing of relevancy, admissibility, and specificity to support the issuance of a subpoena duces tecum. *United States v. Nixon*, 418 U.S. 683, 700, 94 S.Ct. 3090, 3103, 41 L.Ed.2d 1039 (1974); *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir.1981), *cert. denied*, 455 U.S. 949, 102 S.Ct. 1450, 71 L.Ed.2d 663 (1982). The City of Anchorage moved to quash the subpoena, arguing that relevance was not shown, that disclosure would violate the privacy rights of individuals who had cooperated with arson investigators, and that the City had an interest in protecting the confidential communications contained in the files.

The trial court did not err in quashing the subpoena. Appellants have not sufficiently demonstrated the relevance of the documents sought. Appellants have not pointed to any substantial foundation for believing that the investigative reports would furnish defensive matter, or would even suggest that the fires charged in the indictment were probably set by others. Our independent review of the documents supports the trial court's finding that the incidents described in the arson reports were different in nature from those in this case, and give no indication that others were involved. Appellants did not request specific documents, but sought entire arson investigation files. Rule 17(c) was not intended as a discovery device, or to "allow a blind fishing expedition seeking unknown evidence." *United States v. MacKey*, 647 F.2d 898, 901 (9th Cir.1981). Furthermore, appellants did not demonstrate that the reports would have been admissible under the limitations of Federal Rule of Evidence 803(8)(B).

■ Enforcing or quashing Rule 17(c) subpoenas is within the discretion of the trial judge and will not be disturbed unless clearly arbitrary or without support in the record. *United States v. Nixon*, 418 U.S. at 702, 94 S.Ct. at 3104; *United States v. MacKey*, 647 F.2d at 901. In view of the insubstantial showing of relevance, admissibility, and specificity of the material sought, weighed against the interests of the City and individual witnesses in nondisclosure, the district court's ruling was neither arbitrary nor unsupported by the record, and will not be disturbed.

## B. FBI Investigative Report

■ Appellants cite as additional error the trial court's denial of their pretrial and trial motions for production of Special Agent Tarrington's investigative report. The Government submitted the report to the court *in camera* pursuant to appellants' request under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the Jencks Act 18 U.S.C. § 3500. The trial court examined the material, excised the irrelevant portions, turned some over to the defendants, and resealed the remainder for appellate review. Appellants wanted Tarrington's investigations to determine whether they showed other persons might have set the fires or contained other evidence of an exculpatory nature. They have asked the court to review the documents to determine the propriety of the partial excision.

We have reviewed Agent Tarrington's investigative report in full, and find that the trial court exercised proper discretion in examining these documents *in camera* and in excising the portions irrelevant to the Agent's direct testimony. 18 U.S.C. § 3500(c). The trial judge in fact liberally allowed the defense access to these materials. RT 1050–51 (first trial). The excised portions contain no material exculpatory evidence and are either completely speculative or irrelevant to these proceedings. Thus we find no error in the trial court's limitations on discovery of Agent Tarrington's report.

## IV. *Grand Jury Proceedings*

Because of substantial irregularities before the grand jury, the trial court dis-

missed the first indictment. Specifically, the prosecutor made statements irrelevant to the indictment, tending to link appellants to gambling, narcotics, and organized crime, and implying that a grand jury indictment might be necessary to persuade them to cooperate with authorities. Appellants argue that the dismissal should have been with prejudice. Additionally, appellant Smith argues that the second indictment should have been dismissed as to him because of erroneous and prejudicial statements made in response to a grand juror's question. We find both arguments unpersuasive.

### A. First Indictment

Appellants cite no authority supporting their argument for dismissal of the first indictment with prejudice. Our recent cases indicate a presumption that dismissal of an indictment for prosecutorial misconduct does not bar reindictment. *See United States v. Brooklier,* 685 F.2d 1208, 1215 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1194–95, 75 L.Ed.2d 439 (1983) (second indictment adding a new count allowed following dismissal of the first indictment because of grand jury voting irregularities); *United States v. Trass,* 644 F.2d 791, 792–97 (9th Cir.1981) (the district court's instruction to the government to present the case for the third time to the grand jury, following two dismissals without prejudice, reversed as unwarranted judicial effort to enforce a particularized standard of prosecutorial conduct).

■ Appellants argue that dismissal with prejudice is required because multiple prosecutions may be used oppressively and that the extensive media coverage of the case, as well as coverage of the details of the first dismissal, created a danger of misuse. Although misconduct sufficiently gross as to persuade a trial court to dismiss an indictment, followed by re-presentation of the case and successive new indictments, could become oppressive, such did not in fact occur, and appellants' right to a fair trial was not prejudiced by the reindictment. Undocumented speculation regarding possible prejudice as a result of reindictment does not warrant reversing a conviction on appeal.

■ Nor does heavy trial publicity necessarily call for dismissing an indictment. In *Silverthorne v. United States,* 400 F.2d 627 (9th Cir.1968), this court reversed a conviction and ordered new trial because of pretrial publicity, but refused to dismiss the indictment. The court stated that the pretrial publicity issue pertains to the ultimate fairness of the trial, not to the conduct of the government in promoting the prosecution.

> If a grand jury is prejudiced by outside sources when in fact there is insufficient evidence to indict, the greatest safeguard to the liberty of the accused is the petit jury and the rules governing its determination of a defendant's guilt or innocence.

*Id.* at 634; *see also United States v. Y. Hata & Co. Ltd.,* 535 F.2d 508, 512 (9th Cir.), *cert. denied,* 429 U.S. 828, 97 S.Ct. 87, 50 L.Ed.2d 92 (1976).

■ We note that the publicity involved took place in Alaska, but the case was actually and eventually tried in San Diego, far removed from the original area of interest. Hence, if the petit jury eventually selected was impartial, the pretrial publicity did not negative the fairness of the trial. Appellants do not challenge the impartiality of the trial jury. Therefore, there is no basis for holding the pretrial publicity to have worked prejudice upon the verdict. The Government was properly permitted to obtain a second indictment.

### B. Dismissal of the Second Indictment

■ Appellant Smith argues that the second indictment should be dismissed as to him because of incorrect and prejudicial statements made by a witness during the grand jury proceedings. In response to a grand juror question, Agent Tarrington stated that Smith was currently in jail and that he had a felony conviction for violation of probation. Smith's violation was not a felony. The prosecutor did not caution the

grand jury regarding the use of these statements.

"Dismissal of an indictment is required only in flagrant cases in which the grand jury has been overreached or deceived in some significant way . . . ." *United States v. Thompson,* 576 F.2d 784, 786 (9th Cir. 1978); *United States v. Samango,* 607 F.2d 877, 882 (9th Cir.1979) (quoting *Thompson*). The prosecution must have "significantly infringed upon the ability of the grand jury to exercise its independent judgment." *United States v. Cederquist,* 641 F.2d 1347, 1353 (9th Cir.1981). That is not the case here. The grand jury could properly inquire about Smith's criminal record and was not bound by procedural or evidentiary rules. *See United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974). The statement that Smith's probation violation conviction was a felony conviction was in fact erroneous, but does not seem harmful.

The statements do not constitute flagrant prosecutorial misconduct which significantly infringed the ability of the grand jury to exercise its independent judgment. Thus, dismissal of the second indictment was not called for and the denial of such motion to dismiss was a proper exercise of the trial court's discretion. *See United States v. Vargas-Rios,* 607 F.2d 831, 835 (9th Cir. 1979).

## V. *Jury Instructions*

### A. Instruction on Punishment

Appellants also contend that the trial court erred in instructing the jury on weighing the credibility of testimony given by Government witness Jerry Green. Green had entered into a plea bargain with the prosecution whereby he would avoid incarceration in exchange for cooperation and testimony against Reed and Smith. On Friday, March 6, 1981, the court gave the following instruction:

> The testimony of a witness who provides evidence against a defendant for pay, or for immunity from prosecution or punishment, or personal advantage or for vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether such witness' testimony has been affected by interest or by prejudice against the defendant.

RT 2278–79 (second trial). On the following Monday the court instructed the jury that the

> punishment provided by law for the offenses charged in the indictment are matters exclusively within the province of the court. It should never be considered by the jury in any way in arriving at an impartial verdict as to the guilt or innocence of the accused.

RT 2293 (second trial). Appellants argue that the instruction that punishment should not be used "in any way" conflicted with the instruction providing that the jury should consider the self-interest of a witness given immunity from incarceration.

The argument fails. The two instructions cover different subject matters. The credibility instruction related to the witness' credibility—the jury was told that it might consider any influence of the plea bargain in deciding whether Green spoke the truth. The later instruction related only to punishment the *defendant* might receive. It told the jury that whether or to what extent a defendant might suffer punishment was not to be a factor in determining his guilt or innocence. "The adequacy of jury instructions is determined by examining the instructions as a whole." *United States v. Long,* 706 F.2d 1044, 1055 (9th Cir.1983). The trial court did not err.

### B. Instruction on Prior Inconsistent Statements

Appellant Reed complains of error in the trial court's instruction to the jury that prior inconsistent statements of a witness are only admissible to impeach credibility, and cannot be used substantively unless made under oath. Reed argues that prior inconsistent statements by his coconspirators should have been considered as substantive evidence by the jury.

Rule 801(d)(2)(E) of the Federal Rules of Evidence provides that a statement offered against a party is not hearsay and may be used for its substantive value if made "by a coconspirator of a party during the course of and in furtherance of the conspiracy." The statements which Reed contends should have been admitted for their substantive content were made after termination of the conspiracy for which he was convicted. They occurred during an attempt by his erstwhile coconspirators to burn Donovan's on December 31, 1979. Reed was acquitted of charges that he was involved in this incident. Thus, the statements were not made during the course of or in furtherance of the conspiracy to burn McGee's, and were not sanctioned as nonhearsay. Fed.R.Evid. 801(d)(2)(E). Neither were the statements admissible for their substantive content under the hearsay exception for statements against penal interest. For this exception to apply, the declarant must be unavailable as a witness at trial. Fed.R.Evid. 804(b)(3). Here both declarants were present and testified at trial.

### VI. Violation of Fed.R.Evid. 801(d)(2)(E)

Appellant Smith argues that the court violated Federal Rule of Evidence 801(d)(2)(E) in allowing a witness to testify concerning a statement allegedly made by Smith. This contention is meritless. "[A] defendant's own statements are admissions wholly apart from the coconspirator exception and as such are admissible as nonhearsay." United States v. Perez, 658 F.2d 654, 659 (9th Cir.1981).

Testimony of statements by other coconspirators was also admitted by the trial court. Smith objects to the admissibility of these statements under the coconspirator exception arguing that the prosecution had not presented a proper foundation for the evidence. This argument is also without merit. Coconspirator statements may be admitted conditionally "subject to a later motion to strike if the prosecution fails to establish the required foundation." United States v. Watkins, 600 F.2d 201, 204 (9th Cir.), cert. denied, 444 U.S. 871, 100 S.Ct.

148, 62 L.Ed.2d 96 (1979). A proper foundation was laid, and the evidence against the defendants appears sufficient to justify their conviction of the conspiracy. Thus, the statements were properly admitted.

### VII. Vicarious Liability

Finally, appellant Reed contends that he cannot be held vicariously liable for those who did the actual burning because he only agreed to have McGee's "burnt," but did not agree to the use of "explosives." Reed need not have known the precise method employed to be vicariously liable for the acts that resulted in accomplishing the conspiratorial goal of destroying McGee's. The law is clear that a defendant may be convicted of the substantive acts of his coconspirators, as long as those acts are "committed pursuant to and in furtherance of the conspiracy." United States v. Beecroft, 608 F.2d 753, 757 (9th Cir.1979).

Accordingly, the judgment of the district court is AFFIRMED on Counts I and II, and REVERSED on Counts III and V.