**UNITED STATES of America,**
**Plaintiff,**

**v.**

**W.R. GRACE, Alan R. Stringer, Henry A. Eschenbach, Jack W. Wolter, William J. McCaig, Robert J. Bettacchi, O. Mario Favorito, Robert C. Walsh, Defendants.**

**No. CR 05–07–M–DWM.**

United States District Court,
D. Montana,
Missoula Division.

June 8, 2006.

Angelo J. Calfo, Harold Malkin, Michelle K. Peterson, Yarmuth Wilsdon Calfo, Seattle, WA, Michael F. Bailey, Bailey & Antenor, William Adam Duerk, Michael J. Milodragovich, Milodragovich Dale Steinbrenner & Binney, Missoula, MT, David S. Krakoff, Gary A. Winters, Mark Holscher, Mayer Brown Rowe Maw LLP, Washington, DC, Ronald F. Waterman, Gough Shanahan Johnson & Waterman, Palmer A. Hoovestal, Hoovestal Law Firm, Helena, MT, Jeremy Maltby, O'Melveny & Myers, Los Angeles, CA, Elizabeth Van Doren Gray, Sowell Gray Stepp & Lafitte, Columbia, SC, William A. Coates, Roe Cassidy Coates & Price, Greenville, SC, for Defendants.

### ORDER

MOLLOY, Chief District Judge.

### I. Introduction and Background[1]

Before the Court is a motion by Defendant Grace, filed on behalf of all Defendants, for an order under Rule 17(c), Fed. R.Crim.P., allowing pretrial inspection by the Defendants of items designated in subpoenas duces tecum to be issued to third parties.[2] The Defendants must seek the Court's approval of the issuance of the subpoenas because the subpoenas direct the recipients to provide the requested documents for inspection in advance of the trial. The United States opposes the motion on the ground that the subpoenas do not meet the Ninth Circuit's test for the issuance of a subpoena demanding inspection before trial.

With one exception, I agree with the government's position. For the reasons that follow, the Defendants' motion is granted as to one request for production and otherwise denied.

### II. Analysis

#### A. Legal standard

Rule 17(c), Fed.R.Crim.P. provides:

(1) **In General.** A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court

---

1. The facts of this case are well known to the Court and the parties and will not be recited here except where necessary.

2. The targets of the subpoenas are the International Union of Operating Engineers and its local branch; Jim Regh, Mon–Ida Contractors and J.L. Regh Contractors, Inc.; Judy and Melvin Burnett; Millworks West; Melvin and Lerah Parker; Glacier Bancorp.; and Glacier Bank.

may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

**(2) Quashing or Modifying the Subpoena.** On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

Leave of court is not ordinarily required for the issuance of a subpoena duces tecum, but must be obtained where the subpoena would require production before trial. Charles Alan Wright, Federal Practice and Procedure vol. 2, § 274, 244 (3d ed., West 2000).

■ A party seeking production of materials prior to trial pursuant to Rule 17(c) must (1) show that the subpoenaed item is relevant; (2) show that the item sought is admissible; and (3) request the item with specificity. *United States v. Nixon*, 418 U.S. 683, 700, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). These requirements are imposed in recognition of the principle that "a Rule 17(c) subpoena is not intended to serve as a discovery tool or to allow a blind fishing expedition seeking unknown evidence." *United States v. MacKey*, 647 F.2d 898, 901 (9th Cir.1981) (citations omitted). The movant must also show that the materials sought are unavailable through any other means and that the examination and processing of the materials sought should not wait until trial. *Nixon*, 418 U.S. at 702, 94 S.Ct. 3090.

In *Nixon*, the Supreme Court upheld a district court's decision allowing a subpoena duces tecum to issue on behalf of the prosecution commanding the President of the United States to produce tapes and documents pertaining to certain "precisely identified" meetings between the President and others. 418 U.S. at 688, 94 S.Ct. 3090. The prosecutor's request identified the discussions by the time, place, and persons present. *Id.* The prosecutor established the relevance of some the items sought by offering sworn testimony of one or more participants in the conversations as to their content. *Id.* at 700, 94 S.Ct. 3090. As for the rest, the Court held that the prosecutor's identification of the time, place, and participants for each meeting permitted "a rational inference that at least part of the conversations relate to the offense charged in the indictment." *Id.* The Court stated its understanding that "the contents of the subpoenaed tapes could not at that stage be described fully" because the prosecutor had not yet seen them. *Id.* The Court ruled that the tapes and documents would likely be admissible in spite of the hearsay rule because of the good chance they contained statements by the defendants or their co-conspirators in furtherance of the conspiracy. *Id.* at 700–701, 94 S.Ct. 3090.

In *MacKey*, the prosecution in a price-fixing case served a subpoena under Rule 17(c) seeking pretrial production of a "Brooks Brothers diary and a desk-type calendar kept by MacKey at his office at Bevon–Herron, Inc." 647 F.2d at 899. The court of appeals upheld the lower court's ruling requiring production against the defendant's challenge to the relevance of the items sought, stating:

> The diary and calendar were sought to establish that [the defendant] did indeed meet with competitors and engage in discussions that the Sherman Act prohibits. Because the government has not yet seen the documents, it would be unreasonable to expect a more detailed connection be provided between the contents of the documents and the ultimate facts at issue in the case.

647 F.2d at 901.

By contrast, the Ninth Circuit upheld lower court decisions quashing Rule 17(c)

subpoenas in *United States v. Eden,* 659 F.2d 1376 (9th Cir.1981) and *United States v. Reed,* 726 F.2d 570 (9th Cir.1984). In *Eden,* the defendant, a college president, was accused of embezzlement and conversion of government funds and concealing material facts from a government agency. 659 F.2d at 1377. The defendant was alleged to have converted for his personal use money located in special accounts held by the college in connection with federally insured student loan programs. *Id.* at 1377–1378. The district court quashed the defendant's Rule 17(c) subpoena seeking pretrial production by the Department of Education of documents in the following categories:

A. Any and all books, papers, documents or other objects which relate or refer to the California Business College and the allocation and payment to the California Business College of student financial aid funds through the National Institute of Health, College Work Study Program, National Defense Student Loan Program, National Direct Student Loan Program, Basic Educational Opportunity Grant for the period from January, 1974 to January, 1976.

B. Any and all books, papers, documents or other objects which relate or refer to California Business College and its accreditation and/or loss of accreditation.

C. Any and all books, papers, documents or other objects which relate or refer to the payment of $100,000 to Associated Colleges of California, 661 South Burlington Avenue, Los Angeles, California 90057 by way of Treasury Check No. 83,760,968 dated September 15, 1975 and further designated on its face, "NIHA280".

D. Any and all books, papers, documents or other objects which relate or refer to the allocation and/or payment of student funds through the National Institute of Health, College Work Study Program, National Defense Student Loan Program, National Direct Student Loan Program, Basic Educational Opportunity Grants, and/or Supplemental Educational Opportunity Grants to institutions which were unaccredited at the time the allocation and/or payment was made, for the period January, 1974 to January, 1976.

*Id.* at 1381.

The trial court quashed the subpoena, finding that "much of the material was otherwise procurable reasonably in advance trial by the exercise of due diligence, or not so voluminous as to require pretrial production." 659 F.2d at 1381. The court of appeals upheld the order quashing the subpoena, holding the defendant had "failed to meet his burden in several respects," and noting specifically the failure of the requests to "make any show of relevancy other than mere conclusory statements." *Id.*

In *Reed,* defendants charged with burning down a competitor's restaurant sought a Rule 17(c) subpoena duces tecum "to be directed to the City of Anchorage to compel production of investigative reports concerning incidents of alleged arson that occurred in the same general period as the fires at McGee's." 726 F.2d at 576. The purported reason for the request was to procure evidence tending to show that the charged arson was part of series of burnings committed by others. In upholding the lower court's order quashing the subpoena, the Ninth Circuit held that the defendants had made an "insubstantial showing of relevance, admissibility, and specificity," writing:

The trial court did not err in quashing the subpoena. Appellants have not sufficiently demonstrated the relevance of the documents sought. Appellants have not pointed to any substantial foundation for believing that the investigative reports would furnish defensive matter, or

would even suggest that the fires charged in the indictment were probably set by others ... Appellants did not request specific documents, but sought entire arson investigation files. Rule 17(c) was not intended as a discovery device, or to allow a blind fishing expedition seeking unknown evidence. Furthermore, appellants did not demonstrate that the reports would have been admissible under the limitations of Federal Rule of Evidence 803(8)(B).[3]

*Id.* at 577 (citation, internal quotations marks omitted).

While the question of the propriety of a Rule 17(c) subpoena seeking pretrial inspection will always depend on the particular facts of each case, the foregoing cases establish a general rule favoring issuance of a subpoena where the movant knows that the material sought exists and can identify it with specificity, even if he is ignorant of the exact content of the material. On the other hand, where the party seeking the subpoena can describe the material sought only in broad terms or is unsure whether the material even exists, and where the claim of relevance is necessarily speculative, the request is likely to be denied. It is against this background that the Court considers the Defendants' requests for inspection, discussed in turn below.

## B. Defendants' Requests for Inspection

### 1. Subpoenas directed to the International Union of Operating Engineers ("Union") (Exhibits 1 and 2)[4]

■ The Defendants request a Rule 17(c) subpoena issued to the national office of the Union seeking inspection the following:

1. Any literature, including, but not limited to IUOE Operating Engineers' Hazard Alerts, distributed to IUOE Local 361 or any other IUOE local related to asbestos in general and asbestos-contaminated vermiculite.

2. Materials received from or supplied to the U.S Department of Health & Human Services, Bureau of Mines, Employment Standards Administration, Mine Safety and Health Administration, National Institute for Occupational Safety and Health, Occupational Safety and Health Administration, Environmental Protection Agency, Agency for Toxic Substances and Disease Registry, U.S. Public Health Service, Department of Land Information, Montana Department of Environmental Quality, Montana Department of Public Health and Human Services, and/or any other governmental body, including, but not limited to: all standards and regulations regarding vermiculite, tremolite, and/or asbestos; reports or studies related to the Libby facility; health and safety inspections of the Libby facility; reports or studies regarding vermiculite in general, asbestos in general, or tremolite in general.

3. Any and all communications between 1970 to 1991 by Don Wilkins or any representative or agent of Local 361 to the IUOE national office, the IUOE Montana state office or the IUOE regional office regarding health and safety issues related to workers at the W.R. Grace Libby mining facility.

---

**3.** Rule 803(8)(B), Fed.R.Evid., establishes an exception to the hearsay rule for public records or reports setting forth "matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel."

**4.** The exhibit numbers refer to the exhibits to the Defendants' opening brief, which contain the proposed subpoenas.

4. Any and all documents and information tending to show that Zonolite and/or W.R. Grace communicated the hazardous nature and/or friability of the tremolite asbestos contaminated vermiculite.

The subpoena aimed at the Union's local branch seeks the same materials sought from the national office as well as the following additional requests:

5. All minutes of IUOE Local 361 meetings relating to working conditions at the mine and conditions related to health and safety including but not limited to any discussions about the presence of asbestos at the mine or the health effects of asbestos on workers.

6. Any and all documents relating to negotiations and/or arbitration hearings between Local 361 and W.R. Grace & Co. or Zonolite with regard to working conditions at the mine, in particular, conditions related to health and safety including, but not limited to, formal or informal complaints or grievances to W.R. Grace & Co. or Zonolite regarding working conditions at the Libby facility and any transcripts, reports, notes or bulletins distributed to the general membership of IUOE Local 361 regarding same.

7. All documents relating to the October 7, 1985 meeting between Local 361 representatives John Starke, Gerald Nelson, Leroy Thom, Dennis Day, and Mike Noble, NIOSH representatives Harlan Amandus and Jack Parker, M.D., and the W.R. Grace Libby management team, with respect to NIOSH health studies completed on Libby mine workers.

8. All documents received from the American Federation of Labor and Congress of Industrial Organizations ("AFL–CIO") and IUOE regional and national offices related to: any and all standards and regulations regarding asbestos; reports or studies related to the Libby facility; reports or studies regarding vermiculite; and reports or studies regarding asbestos.

9. All documents relating to W.R. Grace & Company's ban on smoking by employees of the Libby facility in approximately 1978 and any grievances or complaints filed by the IUOE Local 361 related to this ban.

These proposed subpoenas exhibit the same flaws identified by the Ninth Circuit in *Reed* and *Eden*, including the failure to describe the items sought with any specificity and the failure to show that the items sought are relevant and admissible. Request Nos. 1, 3–6,8 and 9 are similar to the requests contained in the subpoena quashed in *Eden* in that they seek broad categories of material using language such as "any and all documents."[5] Request No. 2 seeks all materials received from twelve governmental agencies without limitation. These requests lack the requisite specificity, failing to provide any indication that the Defendants even know the documents sought exist, let alone that they contain relevant information. In *Nixon*, the prosecutor knew that meetings had been held and tape recordings made. In *MacKey*, the prosecution knew that a diary existed. Here, the Defendants are seeking to ascertain the existence of documents within broad catch-all categories.

---

5. For example, one of the rejected requests in *Eden* sought "[a]ny and all books, papers, documents or other objects which relate or refer to California Business College and its accreditation and/or loss of accreditation." 659 F.2d at 1381. In terms of specificity, the request is indistinguishable from Request No. 4 in the Defendants' proposed subpoena to the Union seeking "[a]ny and all documents and information tending to show that Zonolite and/or W.R. Grace communicated the hazardous nature and/or friability of the tremolite asbestos contaminated vermiculite."

In other words, the Defendants are attempting to conduct discovery, which Rule 17(c) does not allow. *See Bowman Dairy Co. v. United States,* 341 U.S. 214, 221, 71 S.Ct. 675, 95 L.Ed. 879 (1951) (rejecting as a "fishing expedition" a subpoena seeking all documents " 'relevant to the allegations or charges contained in said indictment, whether or not they might constitute evidence with respect to the guilt or innocence of any of the defendants' ").

The Defendants argue that the documents sought are relevant because they "exhibit the Defendants' efforts to inform various parties of the danger associated with tremolite and those parties' knowledge of the presence and danger of tremolite asbestos." Defs' Br. at 4.[6] But this claim of relevance is speculative, because the Defendants have not shown with specificity that there are any such documents to be found. Request Nos. 1–6, 8 and 9 much more closely resemble the sort of fishing expedition forbidden by *Bowman Dairy* than the focused subpoenas that courts allowed in *Nixon* and *MacKey.*

Moreover, there is a strong likelihood that the materials sought in Request Nos. 4,6 and 9 are available to the Defendants through other means, as each request pertains to correspondence or exchanges involving Grace or its corporate predecessor.

Request No. 7, by contrast, seeks documentation relating to a specific meeting, giving the date of the meeting, the identity of the participants and the subject matter discussed. This request is sufficiently specific and the nature of the meeting agenda allows for a reasonable inference that some of the matters discussed would be relevant to the charges in this case that the Defendants endangered Grace workers and the Libby community by concealing information about the dangers of tremolite. Any responsive documents would likely constitute hearsay, but the Defendants are correct in their argument that such documents would nonetheless be admissible not to show the truth of the matters asserted therein but as proof that certain information was communicated to the Union. The motion for subpoenas directed at the Union is granted with regard to Request No. 7 of Exhibit 2 and denied in all other respects.

### 2. Subpoena directed to Jim Regh, Mon–Ida Contractors and J.L Regh Contractors, Inc. (Exhibit 3)

■ The Regh subpoena seeks:

1. Any and all documents and information, including but not limited to documents reflecting information about any hazards located on the site, related to the lease by W.R. Grace & Company to Jim Regh and Mon–Ida Contractors of the property described in the attached lease dated July 1, 1987.

2. Any and all documents and information related to the lease and subsequent sale of the Mon–Ida operation to Melvin Burnett.

---

6. In their Reply Brief, the Defendants argue that the requirements of relevance and admissibility should be deemed met with respect to all of their subpoena requests because "[t]he Government has not contested either the relevance or admissibility of the requested documents." Defs' Reply at 2. The government's response states, "The subpoena paragraphs are vaguely worded, broad in scope and time, and unreasonable and oppressive. Without the requisite specificity, it cannot yet be determined if the material sought meets the relevancy or admissibility prongs of the Nixon test." Govt.'s Resp. at 12.

The government has not conceded the relevance and admissibility of the documents sought. Rather, it has reasonably refrained from arguing the relevance and admissibility of documents the existence and content of which are unknown. It remains the Defendants' burden to establish that the material sought is relevant and admissible.

3. Any and all documents and information related to any work done by Jim Regh, Mon–Ida Contractors, Jim Regh Construction, Jim Regh General Construction, J.L Regh Contracting, and B & G Electric related in any way to the removal of asbestos from any W.R. Grace property or property owned by Melvin Burnett, Judy Burnett, Millworks West, Melvin Parker, Lerah Parker, and Raintree Nursery. This request includes, but is not limited to, reports documenting the presence of asbestos or reflecting a lack of asbestos on the site.

4. Any and all documents and information tending to show that Zonolite and/or W.R. Grace communicated the hazardous nature and/or friability of the tremolite asbestos contaminated vermiculite.

5. Any and all documents and information, including but not limited to correspondence from Grace and meeting memoranda or notes, tending to show that Jim Regh, Mon–Ida Contractors, and or JL Regh Contractors and/or any employees or agents of these organizations were aware of tremolite or asbestos on the property described in the July 1, 1987 lease.

These read like civil discovery requests and are indistinguishable from the ones the Ninth Circuit rejected in *Eden*. They fail for a lack of specificity and consequently for an insufficient showing of relevance. The motion for subpoenas is denied with regard to Exhibit 3.

### 3. Subpoenas directed to Millworks West and Judy and Melvin Burnett (Exhibits 4 and 5)

■ The Defendants seek identical subpoenas to be issued to Millworks West and Judy and Melvin Burnett requesting:

1. Any and all documents and information, including, but not limited to, any notes or documentation concerning the condition of the property or any structures on the property prior to or on the date of the execution, related to the lease by W.R. Grace & Co.-Conn. to Millworks West of the property described in the attached lease dated October 1, 1989. [Attachment 1]

2. Any and all documents and information related to any meeting(s) between Judy Burnett and/or Mel Burnett and Alan Stringer and/or Robert Marozzo prior to or at the time of the execution of the attached lease dated October 1, 1989.

3. Any and all documents and information related to any notifications by Judy Burnett, Melvin Burnett and/or Millworks West to W.R. Grace & Co.-Conn. or any of its employees or agents, during the duration of the above lease, regarding any unsatisfactory or hazardous conditions that may have existed on the above described property or in any of the structures on the property leased from W.R. Grace & Co.-Conn.

4. Any and all documents related to any notifications given to any employee(s) of Millworks West regarding any hazards associated with the property and/or structures leased by Millworks West from W.R. Grace & Co.-Conn.

5. A list of any Workmen's Compensation claims made by any Millworks West employee related to any respiratory condition, including, but not limited to asbestos related diseases; and any documentation related thereto.

6. Any and all documentation provided to or received from the Montana Department of Labor & Industries' Workers' Compensation Regulation Bureau related to any hazardous conditions that might be present at Millworks West, and/or any hazards related to vermiculite and/or asbestos.

7. Any and all documents related to any vermiculite found on the above described property leased by Judy and Melvin Burnett and/or Millworks West that was either given or sold to Lerah Parker, Mel Parker and/or Raintree Nursery.

8. Any and all documents and information provided by the City of Libby to Judy and Melvin Burnett and/or Millworks West with respect to any hazards or potential hazards associated with the property and/or structures on the property leased from the City of Libby.

9. Any and all notes and documentation regarding any meetings, formal or informal, or any other communications between Judy Burnett, Melvin Burnett and/or Millworks West and Alan Stringer, Jim Stout or any other employee or agent of W.R. Grace & Co.-Conn. between October 1, 1989 and 2002.

10. Any and all notes and documentation regarding the clean up activities at the Export plant managed by Jim Stout, including, but not limited to, any notifications by Judy and Melvin Burnett and/or Millworks West to Jim Stout, W.R. Grace & Co.-Conn. and any of its employees or agents, regarding any concerns related to the clean up.

11. Any and all medical records for Judy Burnett and Melvin Burnett for the period 1980 to the present relating to the existence of health effects resulting or potentially-resulting from asbestos exposure and relating to any tests or examinations tending to show the lack of any health effects resulting or potentially resulting from asbestos exposure.

12. Any and all documents and information tending to show that Zonolite and/or W.R. Grace communicated their knowledge of the hazardous nature and friability of the tremolite asbestos contaminated vermiculite.

13. Any and all documents relating to communications between Judy or Melvin Burnett and the United States Department of Justice relating to W.R. Grace.

Again, these are "fishing expedition" requests are similar from the ones rejected in *Eden.* Also, Request Nos. 3, 9, 10 and 12 involve communications with Defendant Grace and are therefore likely available from other sources. The motion is denied with regard to Exhibits 4 and 5.

### 4. Subpoena directed to Melvin and Lerah Parker (Exhibit 6)

■ The Defendants request that a subpoena issue to Melvin and Lerah Parker seeking:

1. Any and all documents regarding any conversations between Melvin G. Parker and/or Lerah L. Parker and/or any other representative or agent for the Parkers or for Raintree Nursery and Alan Stringer or any other employee or agent of W.R. Grace & Co.-Conn., concerning the potential purchase of any property and/or structures owned by W.R. Grace & Co.Conn.

2. Any and all documents related to any notifications during the period 1991 to 2002 by Melvin G. Parker, Lerah L. Parker or Raintree Nursery, or any agent thereof, to W.R. Grace & Co.-Conn. or any of its employees or agents, regarding any unsatisfactory or hazardous conditions that may have existed on the property identified on the attached Deed from W.R. Grace & Co.-Conn, dated December 17, 1993. [Attachment 1]

3. Any and all documents and information related to any notifications given to any employee(s) of Raintree Nursery regarding any hazards associated with the property, described on the attached Deed.

4. A list of any Workmen's Compensation claims made against Raintree Nursery by any employee related to any res-

piratory condition, including, but not limited to asbestos related diseases; and any documentation related thereto.

5. Any and all documentation provided to or received from the Montana Department of Labor & Industries' Workers' Compensation Regulation Bureau related to any hazardous conditions that might have been present at Raintree Nursery during the period 1992 to 2002, and/or any hazards related to vermiculite, tremolite, and/or asbestos.

6. Any and all documents provided to or received from the United States Environmental Protection Agency ("EPA"), National Institute for Occupational Health & Safety ("NIOSH"), the Occupational Safety and Health Administration ("OSHA"), Montana Department of Environmental Quality ("DEQ"), Montana Department of Health & Environmental Sciences ("DHES"), Montana Department of Labor & Industries ("DLI") or Montana State Department of Lands related in any way to any property described in the attached Deed.

7. Any and all notes and documentation, including, but not limited to letters, notes, email, memos, photographs, regarding communications with any Lincoln County Commissioner, the Lincoln County Roads Department or any other entity of the Lincoln County (Montana) government concerning Rainy Creek Road.

8. The Lloyd Barrie appraisal, dated March 9, 2000, and any and all documents related to same.

9. Any and all medical records for Lerah L. Parker and Melvin G. Parker for the period 1980 to the present relating to the existence of health effects resulting or potentially resulting from asbestos exposure and relating to any tests or examinations tending to show the lack of any health effects resulting or potentially resulting from asbestos exposure.

10. Any and all letters, notes, or other communication received by the Parkers concerning asbestos, tremolite, and/or any other alleged health hazards on the former W.R. Grace property purchased by the Parkers, and/or warnings about the hazards in general of asbestos, received from Michael Crill or any other person prior to 1999.

11. Any and all correspondence, notices, or other communications prior to 1999 from Andrea Guthrie and/or any employee or agent of the Montana Superfund, Montana Asbestos Control Program, Montana Occupational Health Bureau, Montana Department of Health & Environmental Sciences, or Montana Department of Environmental Quality regarding the presence or lack of asbestos or tremolite contamination on the property and/or any visits made to the property by any personnel of the aforestated entities to investigate possible asbestos contamination.

12. Any and all documents relating to communications between Mel or Lerah Parker and the United States Department of Justice relating to W.R. Grace.

13. Any and all documents referring, mentioning, or relating to your purchase or acquisition of vermiculite concentrate or products containing vermiculite or tremolite between January 1, 1991 and the present.

Most of these requests suffer from the shortcomings discussed above relating to specificity and relevance. The Defendants say their requests are "narrowly tailored" to meet the requirements of Rule 17(c), but the requests are nothing more than generalized demands for discovery. For example, Request No. 6 seeks "[a]ny and all documents provided to or received from [six governmental agencies] related in any way to any property described in the attached Deed." Rule 17(c) does not allow

such a broad sweep premised on the suspicion that responsive documents might exist.

The lone exception to the lack of specificity is Request No. 8, which seeks the "Lloyd Barrie appraisal, dated March 9, 2000," and any related documents. But while this request is specific, the Defendants have not shown that it contains relevant material that cannot be obtained through other means and is of such a nature that its examination should not wait until trial. Presumably the appraisal relates to land purchased by the Parkers from Grace, and therefore its relevance might be established by inferring that the appraisal advised the Parkers of the existence of tremolite on their property. However, the appraisal occurred after the EPA clean-up began in Libby and several years after the sale of the Screening Plant to the Parkers in 1993, undermining its relevance in relation to the charges in this case.

The motion for subpoenas is denied with respect to Request Nos. 1–7 and 9–13 of Exhibit 6. It is a closer call whether to grant the motion with respect to Request No. 8, but stringent application of the Rule 17(c) test requires that the motion be denied as to that request as well.

### 5. Glacier Bank and Glacier Bancorp. (Exhibits 7 and 8)

 The Defendants seek a subpoena requiring the Parkers' bank to produce:
Any and all documents, including but not limited to applications for loans, appraisals of any real and personal property located on the property described on the Deed from W.R. Grace & Co.-Conn. and dated December 17, 1993 [Attachment 1], appraisals of any businesses owned by Melvin G. Parker or Lerah L. Parker and run on or from said property, or environmental assessments of said property, relating to any proposed or

completed loan transactions with Lerah L. Parker, Melvin G. Parker, and/or Raintree Nursery.

This request fails for lack of specificity and an insufficient showing of relevance. The motion is denied with regard to Exhibits 7 and 8.

The common thread running through each of the Defendants' proposed subpoenas is their failure to describe the material sought with the requisite degree of specificity. Without the narrow tailoring that such specificity necessarily entails, the Defendants' subpoenas constitute an impermissible effort to conduct discovery on a wide range of topics in hopes that some useful material will emerge. Rule 17(c) may not be put to such purposes.

### III. Order

Based on the foregoing, IT IS HEREBY ORDERED that the Defendants' motion for pretrial inspection (Doc. No. 330) is GRANTED with regard to Request No. 7 of Exhibit 2 and DENIED in all other respects.