United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-2503EA

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | On Appeal from the United |
| v. | * | States District Court |
| | * | for the Eastern District |
| | * | of Arkansas. |
| Leroy Kendall, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  November 18, 1997

Filed:  March 13, 1998

_____

Before RICHARD S. ARNOLD, Chief Judge, McMILLIAN and MAGILL, Circuit
   Judges.

_____

RICHARD S. ARNOLD, Chief Judge.

   Leroy Kendall appeals his conviction of possessing an unregistered destructive
device in violation of 26 U.S.C. § 5861(d) (1994).  He was convicted by a jury and
sentenced by the District Court[1] to 37 months' imprisonment and three years'
supervised release.  Kendall argues on appeal that there was insufficient evidence to

_____

   [1]The Hon. Elsijane Trimble Roy, United States District Judge for the Eastern and
Western Districts of Arkansas.

find him guilty and that the District Court erred in its response to a question from the jury. We affirm.

## I.

Judy Kendall and Leroy Kendall married in late 1993 and lived together in a home owned by Mrs. Kendall in Little Rock, Arkansas. The Kendalls, who are now divorced, did not get along well, separating and reconciling several times in the years following their wedding. In July, 1995, Mrs. Kendall decided she and her husband needed to separate again, so she began to move his belongings out of their home. When she did, she found a briefcase under a bed and discovered inside what she believed were bombs. Mrs. Kendall called the police, and a bomb squad arrived at the Kendall home to dismantle the devices in the briefcase.

Three devices were found inside the briefcase. One of the devices was a metal pipe with two end caps. This pipe had ammunition taped and wrapped around its middle, but it did not have powder inside it. A second pipe had an end cap on one end and cellophane wrapped around the other end. This pipe was filled with powder. Also inside the briefcase was a cardboard box that held a third device, a metal shoe-polish can that was wrapped in tape and contained a bottle rocket, powder, and a 12-gauge shotgun shell. In addition to this third device, a watch, a battery, wax, wiring, and powder were also found in the cardboard box. The bomb squad dismantled all of the devices without incident.

Mr. Kendall, a former Little Rock police officer, was charged in a superseding indictment with one count of possession of an unregistered destructive device in violation of 26 U.S.C. § 5861(d). After a three-day trial, the jury returned a guilty verdict, and the District Court sentenced Mr. Kendall to 37 months' imprisonment and three years' supervised release.

II.

Mr. Kendall first contends there was insufficient evidence to find him guilty. In a prosecution under 26 U.S.C. § 5861(d), the government must prove that a defendant knew he had a device in his possession, that he knew the device was a destructive device, and that the device was not registered to the defendant. The undisputed evidence is that the devices found in Mrs. Kendall's home were not registered in the National Firearms Registration and Transfer Record. Title 26 U.S.C. § 5845(f) defines a "destructive device" as:

> (1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellent charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile . . . ; and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled. The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon . . ..

Mr. Kendall contends the first device was not a "destructive device" as defined by the statute because it did not contain any powder or a detonator. He cites the testimony of Bernie Sherwood, a member of the Little Rock Fire Department's bomb squad who participated in the dismantling of the devices at Mrs. Kendall's home. Sherwood testified that the first device contained no explosive powder. Mr. Kendall also cites the testimony of his expert witness, Donald Smith, a forensic scientist with the Arkansas State Crime Laboratory, that the device contained no powder and no fuse. Mr. Kendall argues that a lack of any explosive powder would have prevented the

-3-

device from exploding and that it therefore did not rise to the level of a "destructive device."

Terry Byar, an explosives enforcement officer employed by the Department of Treasury's Bureau of Alcohol, Tobacco, and Firearms (ATF), testified on behalf of the government and was accepted by the District Court as an explosives expert. Byar testified that the first device was a piece of galvanized steel pipe, six-and-a-half inches long, with caps on each end. At least 20 .38 caliber bullets were taped to the outside of the pipe, and he described this ammunition attached to the pipe as "added shrapnel." Byar's testimony, consistent with Sherwood's and Smith's, was that the pipe contained neither powder nor a fuse. Despite the absence of these items, Byar characterized the device as an explosive bomb because the components necessary to complete the bomb -- powder and a fuse -- were present elsewhere in the briefcase. Byar's testimony was that this first device, although not complete when it was discovered, could have been readily assembled into a bomb.

The second device was an iron pipe, six inches long and a half-inch in diameter, containing 27 grams of powder. One end was capped, and the other end was covered with four layers of Saran Wrap. As with the first device, this pipe had 20 or more .38 caliber bullets taped to the outside. This device contained no detonator, and Mr. Kendall contends that it was not a "destructive device" because it lacked this essential component. He also cites a statement made by Sherwood, the bomb-squad member, to an ATF agent. According to the agent's testimony, Sherwood told him that this second device was not dangerous.

Byar, the ATF explosives expert, testified that the second device needed no additional component to be detonated because the open end made it an explosive "mine" that could be detonated by the force of a person walking over it. In addition, Byar testified that a fuse found in the briefcase could also have been used as a detonator. He also testified that he had been involved in investigations where similar devices had caused injury to both persons and property.

-5-

The third device, found inside the cardboard box, was a metal shoe-polish can that was wrapped in black electrical tape. Testimony presented by the government was that the can was full of powder and contained a bottle rocket and a 12-gauge shotgun shell. The bottle rocket held a fuse that was threaded through a hole in the top of the can, and a second, longer, pyrotechnic fuse was also found outside the can. Sherwood, who observed the device before it was dismantled, said a watch and a battery were attached to the side of the can, and that there were wires running from the battery to a switch and from the switch to the watch.

Byar, the government's expert, testified that the device was a completed explosive bomb: there was a fuse, powder, and a shotgun shell, all contained within a metal can. Mr. Kendall argues that the jury was invited to speculate about the device's contents because the contents were disrupted when the bomb squad used a water cannon to dismantle it. Its remains, partially intact, were presented to the jury, and we have Byar's testimony as well as the testimony of Sherwood, who observed the device before it was dismantled.

The defendant also points to testimony by Sherwood that he could not determine whether the third device was set to explode before it was disrupted. Byar testified that he did not know whether the timing and ignition system would have functioned, in part because an essential element, a bridge wire, was not found in the remains of the device; he also testified, however, that it was not uncommon for the bridge wire, about the size of a hair, to be missing. According to Byar's testimony, although the timing device may not have functioned, the presence of the fuses meant that the device could have been detonated by hand.

Mr. Kendall cites a Fifth Circuit case, United States v. Malone, 546 F.2d 1182 (5th Cir. 1977), as support for his argument that there was insufficient evidence to find him guilty. In Malone, the Court reversed a conviction under 26 U.S.C. § 5681(d) where the components of the alleged "destructive device" were unassembled. But in

Malone there was a complete absence of any explosive material, an essential component. The Court said the words of the statute are "from which a destructive device may be readily assembled," not "from which a destructive device may be readily assembled with addition of other parts." Malone, 546 F.2d at 1184. The Court held that the defendant could not be guilty "because he did not have in his possession all of the component parts from which a destructive device might be readily assembled." Id. The evidence against Mr. Kendall was that at least two of the devices contained explosive material.

Mr. Kendall also cites United States v. Reed, 726 F.2d 570 (9th Cir. 1984), for support. In Reed, the Ninth Circuit reversed a conviction under § 5861(d), holding that paper-wrapped, gasoline-filled cans were not "destructive devices" because it would have been "difficult and dangerous for a person to hold such a can, ignite the paper and then successfully use or throw the can without serious harm to himself." Reed, 726 F.2d at 576. The Court used as a basis for its decision the specific exclusion under § 5845(f) of "any device which is neither designed nor redesigned for use as a weapon." The cans in Reed had been used in an attempt to burn a building, and the Court seemed to find it dispositive that they had been used for that purpose and not designed as weapons. Indeed, the Court upheld convictions under 18 U.S.C. §§ 844(i) and (j) for conspiracy to damage and destroy, and maliciously damaging and destroying, property used in interstate commerce by means of an explosive or incendiary device. Reed, 726 F.2d at 574.

Mr. Kendall argues there was not enough evidence to support a finding that he possessed the devices. He testified that the briefcase containing the devices was not his, that he did not have a key to the house, and that he was never in the house when Mrs. Kendall was not present. The Kendalls separated several times prior to the discovery of the briefcase, and Mr. Kendall stayed with his parents in Augusta, Arkansas, an hour-and-a-half drive from Little Rock, during these separations. His parents testified that Mr. Kendall had very little privacy when he stayed in their home,

and that they never saw him constructing anything when he was there. Judy Kendall testified, however, that the briefcase was Mr. Kendall's and that she had seen it many times before. She testified that Mr. Kendall had previously given her the combination to the lock, and that that was how she had opened the briefcase. She also testified that Mr. Kendall had lived with her in the house for at least a month preceding the discovery of the devices, and that there were numerous occasions when he was home alone, although she did agree that Mr. Kendall did not have his own key to her house.

In reviewing whether there is sufficient evidence to support a jury's verdict of guilty, we view the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that supports the jury's verdict. United States v. Moore, 108 F.3d 878, 881 (8th Cir. 1997) (citing United States v. White, 81 F.3d 80, 82 (8th Cir. 1996)). Having reviewed the evidence, we hold that it is sufficient to support Mr. Kendall's conviction of possessing an unregistered destructive device in violation of 26 U.S.C. § 5861(d). We believe a jury, having heard this evidence, could reasonably find Mr. Kendall guilty.

### III.

Mr. Kendall's second argument on appeal is that the District Court erred in its response to a jury question seeking information about his dismissal from the Little Rock Police Department. The defendant sought, before trial, a motion in limine prohibiting any testimony related to, among other things, his dismissal from the police department. The prosecutor assured the District Court that the government did not intend to raise the issue of Mr. Kendall's dismissal, and the Court ruled, regarding Mrs. Kendall's appearance, that it would not restrict her testimony that Mr. Kendall was a police officer when she married him but that "[o]ther than that, we won't stray afield." Trial Tr. 5. During her testimony, however, Mrs. Kendall mentioned, in response to

questions from the prosecutor, that Mr. Kendall had been fired from the police department. Her testimony, in pertinent part, follows:

Q: When did he lose his job with the police department?

A: January of -- I think it was January of `92. I'm not sure of the year. It was January 12th, I believe, of `92.

Q: When did you marry him?

A: No. Wait a minute. Let me get it right. I'm nervous now. We got married October, October of `93. He got fired January 12th of `94, because it was shortly after we were married. He got fired that January. Well, he got arrested. He was legally fired in February.

Trial Tr. 115.

During its deliberations, the jury sent a note to the Court that said: "We would like to know the reason for Leroy Kendall's dismissal from the police department. For credibility." Trial Tr. 359. Counsel for the defendant requested that the Court instruct the jury that the fact of Mr. Kendall's dismissal should not be considered in its deliberations. The Court, however, responded to the note by telling the jury: "First, let me state for the record that after the trial is over the Court cannot supplement evidence. It would be for you to decide and listen to anything you heard in connection with the trial and nothing else. So I can't give you any assistance on that." Trial Tr. 359.

Mr. Kendall argues that the District Court erred in its instruction. He argues that the jury could have believed he was fired because the police department had "amassed enough evidence against their own officer to conclude guilt." Appellant's Br. 10. It

is not clear what evidence he is concerned the jury may have believed the police department had, but if it is evidence of Mr. Kendall's involvement with these devices,

Mrs. Kendall's own words were that the dismissal occurred in early 1994, almost a year and a half before the devices were discovered.

The government argues there is no difference between the instruction sought by the defense and the instruction actually given by the District Court. Although we think there is a difference, we do not believe the District Court erred in its instruction. The response to a jury request for supplemental instructions is a matter within the sound discretion of the District Court. United States v. White, 794 F.2d 367, 370 (8th Cir. 1986) (citing United States v. Neiss, 684 F.2d 570, 572 (8th Cir. 1982)).

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.